SALT RIVER VALLEY WATER
USERS' ASSOCIATION,
Petitioner,

v.

NATIONAL LABOR RELATIONS
BOARD, Respondent,

International Brotherhood of Electrical
Workers, Local Union 266, AFL–CIO,
Intervenor-Respondent.

INTERNATIONAL BROTHERHOOD OF
ELECTRICAL WORKERS, LOCAL
UNION 266, AFL–CIO, Petitioner,

v.

NATIONAL LABOR RELATIONS
BOARD, Respondent.

NATIONAL LABOR RELATIONS
BOARD, Petitioner,

v.

SALT RIVER VALLEY WATER
USERS' ASSOCIATION,
Respondent.

Nos. 84–7709, 84–7770 and 84–7827.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 13, 1985.

Decided Aug. 23, 1985.

**640**

Charles E. Jones, Phoenix, Ariz., for Salt River Valley Water Users' Ass'n.

Elliott Moore, Linda Dreeben, Washington, D.C., and Stanley Lubin, Treon, Warnicke & Roush, P.A., Phoenix, Ariz., for N.L.R.B. and Intern. Broth. of Elec. Workers, Local Union 266, AFL–CIO.

Before ANDERSON and CANBY, Circuit Judges, and WILLIAMS *, District Judge.

CANBY, Circuit Judge:

Salt River Valley Water Users' Association (the Association), an Arizona corporation, petitions for review of an order of the National Labor Relations Board. The challenged order requires the Association to provide certain information to the International Brotherhood of Electrical Workers, Local No. 266, AFL–CIO (Union), in connection with the Union's processing of a grievance on behalf of an Association employee. The Union has intervened in the Association's case. The Union also petitions for review of the NLRB order, seeking broader discovery of information from the company. The NLRB cross-petitions for enforcement. We enforce the order.

The Association and the Union are parties to a collective bargaining agreement which includes procedures for grievance and arbitration of disputes arising under the agreement. Such a dispute arose when two bargaining unit employees, Wes Erhardt and Antonio Montanez, were caught sleeping on the job. The Association fired Montanez, but only suspended Erhardt. The Union filed a grievance on behalf of Montanez under the collective bargaining agreement, requesting that he be reinstated with backpay.

In order to determine whether Montanez had been the victim of disparate treatment, the Union sought access to Erhardt's personnel file. It eventually focused its request on three categories of information in Erhardt's file: performance reviews, discipline records, and any record on which the company .might rely in the grievance and arbitration proceedings. The company responded that in accordance with established company policy, the requested information would not be released without Erhardt's consent.[1]

The Union then filed an unfair labor practice charge against the Association, seeking to compel the company to release the requested information. The NLRB Regional Director subsequently issued a Complaint against the company charging a violation of sections 8(a)(1) and 8(a)(5) of the National Labor Relations Act. Under sections 8(a)(1) and 8(a)(5), the failure of either an employer or a union to give the other information necessary to enable the requesting party intelligently to evaluate

---

* The Honorable David W. Williams, United States District Judge for the Central District of California, sitting by designation.

1. The relevant portion of the company policy, HR 305, states:
  1. Accessibility of employee records is as follows:
    A. SRP Employee—Has a right to review · or correct his/her personal records.

    B. SRP Management—Has the right to review employee record information for job related reasons.
    C. Outside Agencies—Accessible with employee consent.
    D. Instances Covered by Law—Accessible with legal documents.

grievances filed may constitute an unfair labor practice. *NLRB v. Acme Industrial Co.*, 385 U.S. 432, 435–36, 87 S.Ct. 565, 567–68, 17 L.Ed.2d 495 (1967); *NLRB v. Safeway Stores, Inc.*, 622 F.2d 425, 429 (9th Cir.1980), *cert. denied* 450 U.S. 913, 101 S.Ct. 1353, 67 L.Ed.2d 337 (1981). The requesting party is generally entitled to "discover" any information relevant to the grievance proceeding. *See NLRB v. Safeway Stores*, 622 F.2d at 429.

The Association took the position that the information in Erhardt's file should be protected from disclosure under the standard enunciated in *Detroit Edison Co. v. NLRB*, 440 U.S. 301, 99 S.Ct. 1123, 59 L.Ed.2d 333 (1979). In *Detroit Edison*, the Supreme Court made clear that a union's statutory interest in obtaining relevant information does not always prevail over conflicting interests. *Detroit Edison* identified the privacy interest of employees as an interest deserving of legal protection. *Id.* at 318–19, 99 S.Ct. at 1132–33.

At issue in *Detroit Edison* were aptitude tests used to screen applicants for several openings in a particular position. Relying on test results, the company passed over several of its own employees for the job and hired outside applicants. The union that represented the employees filed a grievance, alleging that the company had violated seniority provisions of the collective bargaining agreement. The union sought to examine the test scores and answer sheets of the employees who had filed the grievance. The company declined to release the test scores without the permission of the employees. Accepting the premise that the requested information was relevant to the grievance, the Supreme Court nevertheless held that the company had not committed an unfair labor practice by conditioning release of the information on the consent of the employees. *Id.* at 320, 99 S.Ct. at 1133.

The *Detroit Edison* Court took several factors into account in determining that the employer could withhold relevant information from the union in grievance proceedings. The Court focused primarily on the nature of the requested information. It described the test results that the union had requested as sensitive information "that may be taken to bear on (the employee's) basic competence." 440 U.S. at 318, 99 S.Ct. at 1133. The Court also considered the employer's good faith in establishing a confidentiality policy, noting that Detroit Edison had not established its policy in order to frustrate the union's attempts to process employee grievances. *Id.* at 319, 99 S.Ct. at 1133. Finally, the Court weighed the burden that the employee consent requirement imposed on the union. *Id.*

Interpreting *Detroit Edison*, the administrative law judge here held that the Association committed an unfair labor practice when it refused to permit the Union to inspect Erhardt's personnel file without his consent. The judge found that the information was relevant to Montanez' grievance.[2] He further found that the "limited exception (to the duty to supply relevant information to a bargaining representative) for information that is confidential in nature" does not apply in this case. Accordingly, the ALJ ordered the company to give the Union access to the disputed file. The NLRB affirmed the ALJ's findings and his conclusion, except that it modified the order so that it required the company to provide only the specific information in the file that the Union had requested.

█ The parties disagree about the standard of review that we should employ in reviewing the NLRB decision. The NLRB argues that its finding that disclosure is required should be given "great weight", relying on *NLRB v. Safeway Stores*, 622 F.2d at 429, and *San Diego Newspaper Guild, Local No. 95 v. NLRB*, 548 F.2d 863, 867 (9th Cir.1977). The Association contends that this court's review is "plenary," citing *New Jersey Bell Telephone Co.*

---

**2.** The Association did not appeal the finding of relevance to the NLRB and does not challenge it    here.

*v. NLRB*, 720 F.2d 789, 790 (3d Cir.1983). In *New Jersey Bell*, the Third Circuit conducted a "plenary" review of the NLRB's decision that New Jersey Bell was required to divulge medical information contained in employee attendance records to a union investigating an employee grievance.

We adopt the deferential standard of review advocated by the NLRB. The question before us is whether an employee's right to maintain the confidentiality of certain relevant information outweighs a union's statutory right to obtain that information. The Supreme Court has noted that "balancing ... conflicting legitimate interests ... to effectuate national labor policy is often a difficult and delicate responsibility, which the Congress committed primarily to the National Labor Relations Board, subject to limited judicial review." *Beth Israel Hospital v. NLRB*, 437 U.S. 483, 501, 98 S.Ct. 2463, 2473, 57 L.Ed.2d 370 (1978), *quoting NLRB v. Truck Drivers Local Union No. 449*, 353 U.S. 87, 96, 77 S.Ct. 643, 647, 1 L.Ed.2d 676 (1957). In *Safeway Stores* and *San Diego Newspaper Guild*, which gave "great weight" to an NLRB determination of the relevance of requested information where that determination was a finding on a mixed question of law and fact, we recognized the principle of *Beth Israel Hospital*. As in those cases, the NLRB here has "balanc(ed) conflicting legitimate interests to effectuate national labor policy". We therefore defer to its expertise. We disagree with the Third Circuit's decision to conduct *de novo* review of an NLRB interpretation and application of a labor statute for which the agency is primarily responsible.

■ The Association argues that its personnel files contain sensitive personal information about company employees. It specifically refers to disciplinary records, which precisely describe infractions and the discipline imposed; performance reviews; and evaluations by the employee's supervisors. We recognize that these materials implicate significant privacy interests of the affected employees. Under the circumstances of this case, however, we believe that the NLRB, in ordering limited disclosure of employee Erhardt's file, struck a reasonable balance between the employee's interest in confidentiality and the Union's statutory right to obtain relevant information. We find several important distinctions between *Detroit Edison* and the present case.

First, the information to which the Union seeks access here does not bear on "basic competence" in the same sense as the information at issue in *Detroit Edison*. *Detroit Edison* involved scores of aptitude tests, which theoretically reveal intellectual capacity and psychological makeup. Taken out of context, such information may threaten an individual's ego and sense of self-worth. Psychologists who give aptitude tests consider them so highly sensitive that they are ethically obligated not to reveal individual results to unauthorized persons. *See* 440 U.S. at 306–07, 99 S.Ct. at 1126–27. In the present case, by contrast, the Union has requested specific employment-related information. That information may demonstrate the employee's level of success at his job, but it does not attempt to provide an objective measure of his "intelligence" or psychological fitness.

Second, the record does not show that Association employees would expect their job performance and disciplinary records to remain confidential under these circumstances. Although the Association relies heavily on the fact that it maintains a policy of non-disclosure to outside agencies, the company introduced no evidence of a corresponding commitment to the employees that it would maintain the confidentiality of the records. In *Detroit Edison* the employer had made a pledge of confidentiality. 440 U.S. at 306, 99 S.Ct. at 1126. Moreover, employment records, unlike aptitude test results, are frequently introduced as evidence in grievance proceedings. The NLRB has observed, in a case much like the one now before us, that "(a)rbitrators routinely consider employee work records in deciding whether employers have applied their disciplinary rules in a consistent, even-handed, and nondiscriminatory manner

... For the evenhanded application of work rules for discipline purposes is a fundamental principle of industrial justice." *Pfizer, Inc.,* 26 N.L.R.B. 916 (1984), *aff'd,* 763 F.2d 887 (7th Cir.1985) (citation omitted). Thus an employee might reasonably anticipate the release of his work history to union representatives for the limited purpose of evaluating a union member's grievance.[3]

Finally, the Association's insistence that personnel records should be protected from disclosure in grievance proceedings is inconsistent with its own treatment of the records. In *Detroit Edison* neither company management nor union representatives were permitted to see test scores or completed answer sheets without the consent of the employees who took the test, even though the tests sought were those of the employees who had filed the grievance. 440 U.S. at 307, 99 S.Ct. at 1127. At the Association, however, employment records of grieving employees are routinely released to the union without the employee's consent. Even more persuasive is the fact that the Association's confidentiality policy permits management access to the records of a non-grieving employee in connection with grievance proceedings. Here the Association relied on Erhardt's employment history, in letters to the Union and in meetings, in defending the Montanez grievance. To explain the less severe punishment given Erhardt, management representatives stated that Erhardt had an "unblemished record," and further represented that his file showed him to be an exceptionally reliable employee who rarely took days off or used sick leave. We do not believe that management should be permitted to refer to such information in its own defense while at the same time denying the griev-

ant's bargaining representative access to the information.

Having determined that the NLRB reasonably interpreted sections 8(a)(1) and 8(a)(5) to compel limited disclosure of the disputed records, we turn briefly to the Union's request for broader disclosure. Under section 10(c) of the Act, 29 U.S.C. § 160, the NLRB is empowered to fashion remedies for unfair labor practices that will "effectuate the policies of this Act." This section gives the Board wide discretion in devising remedies. *Fiberboard Paper Products Corp. v. NLRB,* 379 U.S. 203, 215–16, 85 S.Ct. 398, 405, 13 L.Ed.2d 233 (1964).

The Board did not abuse its discretion in limiting the Union's access to Erhardt's personnel file to "all records ... pertaining to disciplinary actions and performance reviews or which it intends to rely on in the grievance or arbitration procedure concerning the termination of Antonio Montanez." The Union has not denied that it requested only the information specified in the NLRB order, apparently to save copying costs. Furthermore, it has not shown that other information in the file would be relevant to the Montanez grievance. The modified order therefore provides a reasonable remedy.

ORDER ENFORCED.

---

**3.** The nature of the requested information and the employee's expectation that it will remain confidential distinguish the present case from *New Jersey Bell Telephone Co. v. NLRB,* 720 F.2d 789 (3d Cir.1983). *New Jersey Bell* considered employee medical information contained in attendance records. According to the court, "(t)he records disclosed that reasons given for employee absences included colitis, insertion of urethral tubes, vaginal infections, scalded rectal areas and heart problems." *Id.* at 790. The court concluded, "(i)t is difficult to imagine more intimate or personal employee data." *Id.* at 791. Most employees would expect their employer to maintain the privacy of such intimate information. The employment records that the union seeks here simply do not command the same expectation of privacy.