**TOLEDO TYPOGRAPHICAL UNION NO. 63, Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD.**

No. 89–1481.

United States Court of Appeals, District of Columbia Circuit.

Argued May 11, 1990.

Decided July 17, 1990.

---

James B. Coppess, with whom Marsha Berzon, Richard Rosenblatt, and Samuel C. McKnight were on the brief for petitioner.

John H. Ferguson, Attorney, N.L.R.B., with whom Robert E. Allen, Associate General Counsel, and Aileen A. Armstrong, Deputy Associate General Counsel, were on the brief for respondent. Steven B. Goldstein also entered an appearance for respondent.

Before D.H. GINSBURG, SENTELLE, and THOMAS, Circuit Judges.

Opinion for the Court filed by Circuit Judge D.H. GINSBURG.

D.H. GINSBURG, Circuit Judge:

Toledo Typographical Union No. 63 represents the composing room employees of the company that publishes the Toledo Blade, a daily newspaper. In negotiations over a new collective bargaining agreement (CBA), the Employer insisted upon the inclusion of a clause allowing it to deal directly with employees over retirement issues, and to exclude the Union from such individual negotiations; its purpose was to "buy out" the employees' lifetime job guarantees upon the most favorable possible terms. The Union charged the Employer with violating, *inter alia*, § 8(a)(5) of the National Labor Relations Act, 29 U.S.C. § 158(a)(5), but the Board found that the clause concerns a mandatory subject of bargaining and upheld the Employer's position. 295 NLRB No. 68, 131 L.R.R.M. (BNA) 1460 (June 15, 1989).

The clause upon which the Employer went to impasse would, in our view, allow it to prevent the Union from playing an important role reserved to it by statute. Accordingly, we grant the petition for review.

## I. BACKGROUND

In their 1976 and 1979 CBAs, the Union agreed that the Employer could negotiate directly with individual employees over the buy-out of the lifetime job guarantees that it, like many newspaper publishers, had previously given as the price of introducing labor-saving technology. The provision read:

> The Company shall have the right to offer other retirement and/or separation incentives in amounts, under terms and conditions, and for periods of time that the Company shall in its sole discretion deem appropriate, and the Union waives the right to raise a dispute or arbitrate with respect thereto.

131 L.R.R.M. at 1461. The parties have stipulated that the intent of the clause was:

> to permit the Company to make retirement and/or separation incentive offers directly to individual employees; and the Union has no right to participate in such discussions between the Company and individuals concerning the acceptance, rejection or changes in the retirement and/or separation incentive offers.

In 1982, the parties bargained to impasse over inclusion of the same "direct dealing" clause in a new contract. The Union then filed a charge with the NLRB, alleging that the Employer, by insisting upon a clause concerning a non-mandatory subject of bargaining, had refused to bargain in good faith, in violation of § 8(a)(5).

The Board, with one member dissenting, dismissed the complaint, holding that the direct dealing clause concerns "terms and conditions of employment," 29 U.S.C. § 158(d), and is therefore a mandatory subject over which the employer may bargain to impasse. *See generally NLRB v. Wooster Div. of Borg–Warner Corp.,* 356 U.S. 342, 348–49, 78 S.Ct. 718, 722–23, 2 L.Ed.2d 823 (1958); *Idaho Statesman v. NLRB,* 836 F.2d 1396, 1400 (D.C.Cir.1988). The Union argues that the proposed clause is not a mandatory subject of bargaining because it would undermine the Union's role as the employees' exclusive representative by depriving it of the right to represent the employees in buyout negotiations.

## II.  ANALYSIS

Determining whether a matter is a mandatory subject of bargaining is "at the heart of the Board's function." *Ford Motor Co. v. NLRB,* 441 U.S. 488, 497, 99 S.Ct. 1842, 1849, 60 L.Ed.2d 420 (1979). Its decisions, if "reasonably defensible, . . . should not be rejected merely because the courts might prefer another view of the statute." *Id.; see also United Food & Commercial Workers Int'l Union Local 150–A v. NLRB,* 880 F.2d 1422, 1433 (D.C. Cir.1989). Where the Board's determination is "fundamentally inconsistent with the structure of the Act," however, the court must reject its interpretation. *American Ship Bldg. Co. v. NLRB,* 380 U.S. 300, 318, 85 S.Ct. 955, 967, 13 L.Ed.2d 855 (1965); *see also NLRB v. Brown,* 380 U.S. 278, 291, 85 S.Ct. 980, 988, 13 L.Ed.2d 839 (1965) ("Reviewing courts are not obliged to stand aside and rubber-stamp their affirmance of administrative decisions that they deem inconsistent with a statutory mandate or that frustrate the congression-al policy underlying a statute."). This is such a case.

■■■■  An employer may deal directly with its employees over any lawful matter if it first obtains the consent of their union. *See J.I. Case Co. v. NLRB,* 321 U.S. 332, 338, 64 S.Ct. 576, 580–81, 88 L.Ed. 762 (1944) (direct dealing is particularly appropriate where "there is great variation in circumstances of employment or capacity of employees") (dictum); *see also,* under the Railway Labor Act, *Order of Railroad Telegraphers v. Railway Express Agency, Inc.,* 321 U.S. 342, 347, 64 S.Ct. 582, 585–86, 88 L.Ed. 788 (1944) ("It may be agreed that particular situations are reserved for individual contracting, either completely or within prescribed limits."). But an employer that negotiates directly with an individual employee, without first bargaining with the union, violates § 8(a)(5). *Medo Photo Supply Corp. v. NLRB,* 321 U.S. 678, 684, 64 S.Ct. 830, 833, 88 L.Ed. 1007 (1944). The parties agree that the subject about which the direct dealing clause would permit the Employer to deal directly with its employees—early retirement and separation incentives for employees with lifetime employment guarantees—would itself be a mandatory subject of bargaining. In other words, if the Employer wants to bargain over changes in the status quo on retirement and separation incentives, then the Union must join issue with it in good faith, and either side may insist upon its position to the point of impasse. The issue upon which Employer and Union are now divided is whether the first derivative of that underlying subject, *viz.* the Employer's demand to bargain directly with employees over changes in their retirement rights, to the exclusion of the Union, is also a mandatory subject of bargaining.

The Board concedes that the proposal involves a limited waiver of the Union's statutory right to bargain collectively. 131 L.R.R.M. at 1461–62. If the proposal is deemed "permissive," then the Employer may not bargain to impasse over it, but is remitted either to living with the status quo, in which it has a contractual obligation to provide lifetime employment to some

employees, or to bargaining with the Union—not the individual employees—over changes in the status quo. If, on the other hand, the proposal is mandatory, as the Board found, then the Employer lawfully bargained to impasse. Whether the Employer could thereafter implement the proposal without the Union's consent is not at issue in this case, but a related question is pending before the Tenth Circuit in *Colorado Ute Elec. Ass'n, Inc.*, 295 NLRB No. 67, 131 L.R.R.M. (BNA) 1457 (June 15, 1989), *pet. for review pending*, No. 89-9545 (10th Cir.) (whether employer may unilaterally implement merit pay raises after impasse).

In urging that the proposal for direct dealing is a mandatory subject, and therefore that the Employer could lawfully go to impasse over it, the Board relies principally upon *NLRB v. American National Ins. Co.*, 343 U.S. 395, 72 S.Ct. 824, 96 L.Ed. 1027 (1952), *see* 131 L.R.R.M. at 1462, which pre-dated the distinction between mandatory and non-mandatory subjects. In *American National*, the Court held that an employer's insistence upon a "management functions" clause that would give it a free hand in setting certain terms and conditions of employment—that is, mandatory subjects of bargaining—is not *per se* unlawful. 343 U.S. at 409, 72 S.Ct. at 832. In the present case, the Board concluded that the Employer's proposed direct dealing clause is not distinguishable from a management rights clause authorizing an employer to take unilateral action, inasmuch as each would enable the Employer to settle terms and conditions of employment without consulting the Union. 131 L.R.R.M. at 1462 n. 8. The Union, on the other hand, contends that because the direct dealing clause involves the Employer in individual bargaining, the Board's decision is inconsistent with the institution of collective bargaining established in and protected by the NLRA.

The Union relies principally upon *Borg-Warner*, in which the employer insisted upon, *inter alia*, a "ballot" clause that required the union to hold a secret vote on the employer's last offer before calling a strike. Accepting the Board's distinction between mandatory and non-mandatory (or

permissive) subjects of bargaining, the Court held that the ballot clause was non-mandatory because, unlike a no-strike clause, which "regulates the relations between the employer and the employees," a ballot clause "deals only with relations between the employees and their unions." 356 U.S. at 350, 78 S.Ct. at 723. The Court also observed that the clause would "substantially modif[y] the collective-bargaining system provided for in the statute by weakening the independence" of the union because it "enables the employer, in effect, to deal with its employees rather than with their statutory representative." *Id.*

The Board regards *Borg-Warner* as distinguishable on the ground that "[t]he ballot clause in issue [there]," as the Supreme Court noted, " 'settle[d] no term or condition of employment,' and 'deal[t] only with relations between the employees and their unions.' " 131 L.R.R.M. at 1461 n. 4 (quoting *Borg-Warner*, 356 U.S. at 350, 78 S.Ct. at 723). The Board reasons that the direct dealing provision here is mandatory because, like the management rights clause held mandatory in *American National*, it reserves a mandatory issue for future determination without the participation of the Union; each clause, in other words, involves a waiver of the union's statutory bargaining rights in a narrow area. *Id.* at 1462. True enough. The clause at issue here also, however, unlike a management rights clause, intrudes into the relationship between the employees and their Union in a manner redolent of the ballot clause in *Borg-Warner*.

By allowing the Employer to bargain directly with its employees, Toledo Blade's proposal would deprive the Union *pro tanto* of its central statutory role as their representative in dealing with the Employer. This direct dealing clause, therefore, is different in kind from the management rights clause in *American National*, which would have ceded back to the employer an area within which it could set the terms and conditions of employment notwithstanding the union's statutory right to bargain over those matters. The employer's subsequent decisions would be made unilat-

erally; they would not entail its negotiating with its employees. In contrast, the clause at issue here contemplates direct negotiations between employer and employee: its intent and effect are to exclude the Union from their "discussions ... concerning the acceptance, rejection or changes in the retirement and/or separation incentive offers." While the Court in *Borg–Warner* observed that the ballot clause would "enable the employer, *in effect*, to deal with its employees rather than with their statutory representative," 356 U.S. at 350, 78 S.Ct. at 723 (emphasis added), Toledo Blade's clause would authorize it *in fact* to deal with its employees, to the exclusion of the Union, in negotiating the terms and conditions of retirement. The clause does not, therefore, merely retain for the Employer unilateral authority to set certain terms and conditions of employment, as does a traditional management rights clause. *See, e.g., NLRB v. Tomco Communications, Inc.,* 567 F.2d 871, 878 n. 4 (9th Cir.1978) (text of management rights clause).

The Board calls the distinction between unilateral action and direct dealing, as drawn by the dissenting member, a "distinction without a difference." 131 L.R.R.M. at 1462 n. 8. But there is a difference: where a right is reserved to management, the employee is not put into the position of negotiating with his employer without the participation of his union.

The Board's apparent indifference to whether the retirement incentive issue is settled through collective or individual bargaining is as surprising as its implications are broad. So far as the Board's reasoning goes, an employer might also insist to impasse upon the right to set each employee's wages and hours through an individual negotiation from which the union would be barred. The practical result would be a license for the employer to go to impasse over whether it has to deal with the union; that is the antithesis of good faith collective bargaining, which requires the employer to accept the legitimacy of the union's role in the process. While the Board argues that the narrow scope of Toledo Blade's proposal works in its favor, it sug-

gests no limiting principle by which to distinguish the broader proposal we have instanced. In the absence of some reasoned distinction between the two cases, we are constrained to conclude that the Employer's demand constitutes an unfair labor practice. *Cf. Plumbers Local 387,* 266 NLRB 129, 134 (1983) (employer's demand to submit future contract disputes to arbitration held non-mandatory because it would violate the "fundamental right ... to bargain collectively" (quoting *Sheet Metal Workers Int'l Ass'n Local 59,* 227 NLRB 520, 521 (1976)).

Like the "ballot" clause in *Borg–Warner,* the direct dealing provision here would "substantially modif[y] the collective-bargaining system provided for in the statute by weakening the independence of the 'representative' chosen by the employees." 356 U.S. at 350, 78 S.Ct. at 723. Indeed, the ballot clause merely subjected the union's leadership to the check of an "advisory vote" before it could call a strike, *id.;* the direct dealing clause excludes the Union altogether from a role in the bargaining process. The proposal thus represents at least as significant an infringement upon the system of collective bargaining as the one the Court held non-mandatory in *Borg–Warner.*

The proposed clause is particularly offensive to the principle of collective bargaining because it would put the Employer in a position to exert a highly divisive force among the members of the bargaining unit. By negotiating directly with employees in an attempt to buy out some number of lifetime job guarantees at the lowest cost, the Employer could effectively put the employees into competition with each other to sell out at the lowest price. The clause thus not only displaces the Union from its representational role, it also gives the Employer the opportunity to destroy the cohesiveness of the Union's membership.

We recognize that, contrary to the Union's contention, the best interests of the individual employees who have lifetime job guarantees will not necessarily be furthered by requiring the Employer to procure the Union's consent before it deals directly with employees on the terms of

their separation and retirement. Indeed, the Union acknowledges that it regards those guarantees as a "group asset," which certainly suggests that an individual employee willing to sell may not, in the Union's view, be entitled to the full price that the Employer is willing to pay. As the Supreme Court has recognized, however, "[t]he collective bargaining system as encouraged by Congress and administered by the NLRB of necessity subordinates the interests of an individual employee to the collective interests of all employees in a bargaining unit." *Vaca v. Sipes*, 386 U.S. 171, 182, 87 S.Ct. 903, 912, 17 L.Ed.2d 842 (1967); *see also Emporium Capwell Co. v. Western Addition Community Org.*, 420 U.S. 50, 62, 95 S.Ct. 977, 984–85, 43 L.Ed.2d 12 (1975) ("the superior strength of some individuals or groups might be subordinated to the interest of the majority"). That is not a weakness in, but a necessary source of strength to, the system of collective bargaining established by the NLRA, with which the Employer's proposal is fundamentally inconsistent.

### III. CONCLUSION

In view of the foregoing, we grant the petition for review and remand the matter for further action consistent with our conclusion that the Employer's bargaining conduct violated § 8(a)(5) of the NLRA.

*So ordered.*