RETLAW BROADCASTING CO., A SUBSIDIARY OF RETLAW ENTER-PRISES, INC. d/b/a KJEO–TV, Channel 47, Petitioner–Cross–Respondent,

v.

NATIONAL LABOR RELATIONS BOARD, Respondent–Cross–Petitioner,

and

American Federation of Television and Radio Artists, Respondent–Intervenor.

Nos. 97–70927, 97–71147.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 6, 1998.

Decided March 30, 1999.

Sarah A. Wolfe, The Law Firm of Thomas E. Campagne & Associates, Fresno, California, for petitioner-cross-respondent Retlaw Broadcasting Company.

Daniel J. Michalski, Fred L. Cornnell, Supervisory Attorney, Frederick L. Feinstein, General Counsel, Linda Sher, Associate General Counsel, Aileen A. Armstrong, Deputy Associate General Counsel, National Labor Relations Board, Washington, D.C., for respondent-cross-petitioner National Labor Relations Board.

Marsha Berzon (argued), Altshuler, Berzon, Nussbaum, Berzon & Rubin, San Francisco, California; Donald S. Tayer, Beeson, Tayer & Bodine, San Francisco, California; James B. Coppess, Ruth Burdick, Washington, D.C., for respondent-intervenor American Federation of Television and Radio Artists, AFL–CIO.

Before: SCHROEDER and THOMAS, Circuit Judges, and MOSKOWITZ,* District Judge.

MOSKOWITZ, District Judge:

Retlaw Broadcasting Company ("Retlaw") petitions for review of an order of the National Labor Relations Board ("NLRB") finding that Retlaw committed unfair labor practices in violation of the National Labor Relations Act. The NLRB has filed a cross-application for enforcement of the order. Collective bargaining between Retlaw and the union in this case deadlocked over a provision that Retlaw proposed involving "personal service contracts." This provision would have allowed Retlaw to negotiate directly with current and prospective employees on terms and conditions of employment. The principal issue before us is whether this disputed contract term is a mandatory or permissive subject of collective bargaining.

* The Honorable Barry Ted Moskowitz, United States District Judge for the Southern District of California, sitting by designation.

Because we hold that the provision here is permissive, Retlaw committed an unfair labor practice when it declared an impasse over this issue and implemented part of its final contract proposal. We also hold that Retlaw's refusal to produce copies of personal service contracts to the union was an unfair labor practice. Accordingly, we deny Retlaw's petition for review and grant the NLRB's cross-application for enforcement.

## I

Retlaw operates KJEO, a television station in Fresno, California.[1] This appeal stems from a labor dispute between Retlaw and its employees' exclusive bargaining representative, the American Federation of Television and Radio Artists, AFL–CIO. The union represents the station's performing artists.

A collective bargaining agreement ("CBA") that went into effect in 1990 expired on July 1, 1993.[2] Negotiations in the summer of 1993 aimed at a new CBA broke down over personal service contracts ("PSCs"). PSCs are employment agreements negotiated directly between Retlaw and an individual employee, who is often represented in the negotiations by his or her attorney or agent. A PSC allows Retlaw and the employee to craft specific terms and conditions of employment that are more favorable to the employee than under the CBA. PSCs had been a feature of the previous CBA. Indeed, the union had long accepted PSCs as a general proposition to enable Retlaw to attract particularly talented or coveted employees. The CBA had acted as a floor on terms and conditions of employment that could be exceeded on an individual basis via a PSC. Retlaw and the union had

followed a practice of allowing the union to be present during PSC negotiations, but only on the employee's request.

Negotiations in the summer of 1993 on a new CBA reached a deadlock over the PSC provision. Retlaw and the union agreed on most of the language, but could not reach agreement on the italicized portions below that Retlaw wanted to add:

This Agreement states the minimum terms for employment of an Artist, and the Company will not employ an artist on terms less favorable to him or her than those stated in this agreement. Consequently, the Company may enter into [PSCs] or other contracts. However, any PSC or other contract which the Company may now have or may later enter into with an Artist shall be deemed modified to accord with this Agreement, except when the PSC or other contract *(when considered as a whole)* provides more favorable terms for the Artist than this Agreement *(when considered as a whole); and/or except when the salary within the PSC or other contract exceeds the CBA minimum salary by 20%.* Further, nothing in this Agreement will prevent the Company from agreeing with an Artist on higher compensation or other benefits for either services covered by this Agreement or additional services.

On July 26, negotiations broke off over this and several other sticking points not at issue in this appeal. By letter dated August 18, Retlaw declared that the parties were at a "good-faith" impasse and that it would exercise its "right" to implement unilaterally its "last, best, and final" collective bargaining proposal. Retlaw then implemented that proposal in several respects.[3] As discussed further below, the NLRB found that no valid impasse existed

1. This factual overview is taken from the NLRB's findings. *Retlaw Broad. Co.*, 324 N.L.R.B. No. 18, 1997 WL 428577 (1997).

2. All dates are 1993 unless otherwise specified.

3. Specifically, the parties stipulated that Retlaw negotiated PSCs with two employees who were hired after the date of the purported impasse, and that Retlaw had begun implementing a "merit increase" proposal that the union refused to accept before negotiations broke off.

because the PSC provision was a "permissive" subject of collective bargaining. It followed from this conclusion that Retlaw's bargaining to impasse over the PSC provision, and implementing part of its final contract proposal, was an unfair labor practice, in violation of Sections 8(a)(1) and 8(a)(5) of the National Labor Relations Act ("Act"). *See* 29 U.S.C. §§ 158(a)(1), (5).

After the purported impasse, the union by letter dated August 24 demanded that Retlaw produce copies of "*all* existing [PSCs] with bargaining unit employees and the names and addresses of the bargaining unit," explaining that this information was needed to prepare for further negotiations. After Retlaw did not reply, the union repeated this request several weeks later in a second letter. By letter dated October 19, Retlaw through counsel responded with a list of names and addresses of all bargaining unit employees, including whether they were employed under PSCs. However, asserting that "strong confidentiality and relevancy concerns, as well as employee privacy issues" barred disclosure, Retlaw refused to produce copies of the PSCs themselves. Retlaw maintained in the letter that this information was "irrelevant to the bargaining process" and suggested that the union's request was in bad faith because it came after negotiations had stalemated. The NLRB concluded that Retlaw's refusal to produce copies of the PSCs to the union was an unfair labor practice, also in violation of Sections 8(a)(1) and 8(a)(5) of the Act.

Retlaw appeals, contending that the NLRB erred in concluding that (1) PSCs are a permissive subject of collective bargaining, and (2) Retlaw had no right to refuse to produce copies of PSCs to the union. We have jurisdiction under 29 U.S.C. §§ 160(e)-(f).

## II

The NLRB's order will be enforced if it correctly applied the law and its factual findings are supported by substantial evidence. *NLRB v. District Council of Iron Workers*, 124 F.3d 1094, 1098 (9th Cir.1997). Retlaw advances no serious claim that the NLRB's findings of fact are not adequately supported by the record. Rather, at issue is the scope of Retlaw's obligation to bargain collectively in good faith over "wages, hours, and other terms and conditions of employment." 29 U.S.C. §§ 158(a)(5), (d). The NLRB's conclusions as to matters falling within "terms and conditions of employment" are not lightly disturbed:

> Because it is evident that Congress assigned to the Board the primary task of construing these provisions ... and because the classification of bargaining subjects as terms and conditions of employment is a matter concerning which the Board has special expertise, its judgment as to what is a mandatory bargaining subject is entitled to considerable deference.

*Ford Motor Co. v. NLRB*, 441 U.S. 488, 495, 99 S.Ct. 1842, 60 L.Ed.2d 420 (1979) (citation and internal quotation marks omitted). "Of course, the judgment of the Board is subject to judicial review; but if its construction of the statute is reasonably defensible, it should not be rejected merely because the courts might prefer another view of the statute." *Id.* at 497, 99 S.Ct. 1842 (citation omitted). The NLRB's determination that an employer must disclose information to a bargaining representative is given "great weight." *Salt River Valley Water Users' Ass'n v. NLRB*, 769 F.2d 639, 641–42 (9th Cir.1985).

## III

### A

Whether Retlaw was entitled to declare an impasse over the PSC provision and implement its final offer turns on the distinction between "mandatory" and "permissive" subjects of collective bargaining. Considerable scholarly effort has been invested explaining the difference and it is not easily characterized. *See generally* 1 Patrick Hardin, The Developing Labor

Law 851–947 (3d ed. 1992 & Supp.1998). Nonetheless, a few general principles are relevant.

In circumstances where it applies, the Act gives employees the right "to bargain collectively through representatives of their own choosing." 29 U.S.C. § 157. A representative selected for this purpose serves as the employees' exclusive bargaining agent. 29 U.S.C. § 159(a). Mandatory subjects—"wages, hours, and other terms and conditions of employment"—must be bargained collectively in good faith. 29 U.S.C. §§ 158(a)(5), (d). This reflects the Act's preference for channeling disagreements over these core topics into collective bargaining to promote "industrial peace" and minimize the economic impact of labor strife on interstate commerce. *First Nat'l Maintenance Corp. v. NLRB,* 452 U.S. 666, 674, 101 S.Ct. 2573, 69 L.Ed.2d 318 (1981). While negotiation in good faith on mandatory subjects is required, agreement on them is not. *Id.* at 678 n. 16, 101 S.Ct. 2573; 29 U.S.C. § 158(d). On the contrary, "within that area neither party is legally obligated to yield." *NLRB v. Wooster Div. of Borg–Warner Corp.,* 356 U.S. 342, 349, 78 S.Ct. 718, 2 L.Ed.2d 823 (1958) (*"Borg–Warner"*). On mandatory terms, the Act concerns itself only with the process of collective bargaining. The results are largely left to the parties and are a function of their respective economic positions: "[B]oth employer and union may bargain to impasse over these matters and use the economic weapons at their disposal to attempt to secure their respective aims." *First Nat'l Maintenance,* 452 U.S. at 675, 101 S.Ct. 2573. Because there is no requirement to accept the other side's offer on mandatory subjects, after a good-faith impasse, the employer generally may implement mandatory-subject terms that were proposed before impasse and employees may strike. *See, e.g., Colorado–Ute Elec. Ass'n, Inc. v. NLRB,* 939 F.2d 1392,

1403–05 (10th Cir.1991). The possibility of impasse, therefore, is a bargaining tool for both sides and an "integral part" of collective bargaining on mandatory subjects. *Brown v. Pro Football, Inc.,* 518 U.S. 231, 238–39, 116 S.Ct. 2116, 135 L.Ed.2d 521 (1996).

As a general proposition, "all other subjects are permissive subjects." *Walnut Creek Honda Assocs. 2, Inc. v. NLRB,* 89 F.3d 645, 648 (9th Cir.1996) (citing *First Nat'l Maintenance*). Permissive subjects deal with a wide range of matters deemed to fall outside the framework of mandatory terms.[4] In some cases, a provision may be recognized as permissive because it clearly does not involve a core employment issue at the heart of mandatory bargaining. For example, a proposal dictating that a change in the union's constitution or bylaws would void the contract has been held to be permissive. *Betra Mfg. Co.,* 233 N.L.R.B. 1126, 1977 WL 9399 (1977), *enforced,* 624 F.2d 192 (9th Cir.1980) (unpublished table decision). In determining whether a provision is mandatory or permissive, any effect the provision would have on the collective bargaining process is also an important factor. If the provision "substantially modifies the collective-bargaining system provided for in the statute by weakening the independence of the 'representative' chosen by the employees," or "enables the employer, in effect, to deal with its employees rather than with their statutory representative," the subject is permissive. *Borg–Warner,* 356 U.S. at 350, 78 S.Ct. 718.

The parties may bargain collectively on permissive terms, but they are not required to do so. To insist on a permissive subject to the point of impasse—in other words, to hold up an agreement over a permissive term—is an unfair labor practice because it effectively precludes collective bargaining on mandatory terms: "[S]uch conduct is, in sub-

---

4. A third category is illegal subjects, not at issue here. *See generally* 1 Patrick Hardin, The

Developing Labor Law 948–54 (3d ed. 1992 & Supp.1998).

stance, a refusal to bargain about the subjects that are within the scope of mandatory bargaining." *Id.* àt 349, 78 S.Ct. 718. A valid impasse, accordingly, cannot be based on a permissive term. *First Nat'l Maintenance,* 452 U.S. at 675 n. 13, 101 S.Ct. 2573; *Idaho Statesman v. NLRB,* 836 F.2d 1396, 1400 (D.C.Cir. 1988). As other courts have observed, framing a subject as mandatory or permissive has significant consequences for the parties' bargaining obligations under the Act: "The distinction between mandatory and permissive subjects of bargaining is crucial in labor disputes, because it determines to what extent one party may compel the other to bargain over a given proposal. . . ." *Silverman v. Major League Baseball Player Relations Comm., Inc.,* 880 F.Supp. 246, 253 (S.D.N.Y.), *aff'd,* 67 F.3d 1054 (2d Cir. 1995).

**B**

The dispute here is over how these well established principles apply to PSCs. In sum, the NLRB concluded that the PSC provision was permissive because direct dealing between Retlaw and employees via PSCs, unless accepted by the union in advance, would undermine the Act's mandate that Retlaw bargain collectively with the union on "wages, hours, and other terms and conditions of employment." 29 U.S.C. §§ 158(a)(5), (d).

Whether this sort of individual bargaining is mandatory or permissive is a question of first impression in this circuit. The NLRB relied on the District of Columbia Circuit's decision in *Toledo Typographical Union No. 63 v. NLRB,* 907 F.2d 1220 (D.C.Cir.1990). There, collective bargaining reached a deadlock over a provision that would have allowed the employer to negotiate directly with employees, with no role for the union, over "buy outs" of the employees' lifetime job guarantees. *Id.* at 1221–22. The NLRB found that this provision was mandatory and thus a legitimate basis for impasse. *Id.* at 1222. De-

spite the deferential standard of review, the D.C. Circuit declined to enforce the NLRB's order. The subject matter of the provision was one that the union, if called upon by the employer, would have to bargain on in good faith because it implicated terms and conditions of employment. *Id.* However, this was a different question from whether the employer could exclude the union from negotiations with individual employees on terms and conditions of employment. *Cf. NLRB v. McClatchy Newspapers, Inc.,* 964 F.2d 1153, 1158–60 (D.C.Cir.1992) (Edwards, J., concurring) (discussing proposals that on their face deal with employment terms and conditions but also feature direct dealing between employer and employees). Reviewing the tenets of *Borg–Warner,* the D.C. Circuit concluded that the provision was permissive because it "would deprive the Union pro tanto of its central statutory role as [the employees'] representative in dealing with the Employer." *Toledo,* 907 F.2d at 1223 (italics deleted).

*Toledo* dealt only with retirement "buyouts," but the potential sweep of the employer's action, if deemed mandatory, was not lost on the court. In fact, the D.C. Circuit in *Toledo* foresaw the case before us today: "So far as the Board's reasoning goes, an employer might also insist to impasse upon the right to set each employee's wages and hours through an individual negotiation from which the union would be barred." *Id.* at 1224. The D.C. Circuit noted the problem with direct dealing: "The practical result [of finding the provision mandatory] would be a license for the employer to go to impasse over whether it has to deal with the union; that is the antithesis of good faith collective bargaining, which requires the employer to accept the legitimacy of the union's role in the process." *Id.*

The PSC provision raises the same concerns about individual bargaining that drove the result in *Toledo.* Retlaw cannot relegate the union to a mere observer on the very matters for which the

Act prescribes it to have a critical role. The potential threat to collective bargaining here should not be understated, because Retlaw's final proposal would have ratcheted direct dealing on core employment terms to a new level. It would have allowed Retlaw, in an individual PSC, to undercut the terms of the CBA when the PSC "as a whole" provided a better deal for the employee, or when the PSC salary exceeded the CBA minimum by 20%. In practical effect, Retlaw's proposal would have permitted not only direct negotiations with individual employees on terms and conditions of employment, but also would have enabled Retlaw to circumvent the minimum guarantees of the CBA itself on a term-by-term basis. Of course, Retlaw's employees, through their union, are free to relinquish their right to bargain collectively on wages, hours, and other terms and conditions of employment. *J.I. Case Co. v. NLRB,* 321 U.S. 332, 338, 64 S.Ct. 576, 88 L.Ed. 762 (1944). In allowing PSCs in the previous CBA, the union had done just that. This is a far cry, however, from the employees' having to do so under pain of impasse.

We hold that the PSC provision is permissive because it would have allowed "the employer, in effect, to deal with its employees rather than with their statutory representative." *Borg–Warner,* 356 U.S. at 350, 78 S.Ct. 718. Retlaw's declaration of impasse over this issue violated the Act because it amounted to a refusal "to bargain collectively with the representatives of [the] employees." 29 U.S.C. § 158(a)(5).

This conclusion is not reached in a vacuum. Indeed, the prohibition on direct dealing is nearly as old as the Act itself. The Supreme Court made clear long before *Toledo* that an employer cannot bypass the union on matters at the very core of mandatory bargaining: "[I]t is a violation of the essential principle of collective bargaining and an infringement of the Act for the employer to disregard the bargaining representative by negotiating with individual employees ... with respect to wages, hours and working conditions." *Medo Photo Supply Corp. v. NLRB,* 321 U.S. 678, 684, 64 S.Ct. 830, 88 L.Ed. 1007 (1944) (reiterating rule of *J.I. Case Co. v. NLRB,* 321 U.S. 332, 64 S.Ct. 576, 88 L.Ed. 762 (1944)). This precept has been applied in a number of cases involving various permutations of direct dealing.[5]

Finally, as the NLRB points out, we have described the size or scope of the "bargaining unit" as a permissive subject. *Walnut Creek Honda Assocs. 2, Inc. v. NLRB,* 89 F.3d 645, 648 (9th Cir.1996). The "scope of the bargaining unit" has been defined as "what employees the unit represents." *Boise Cascade Corp. v. NLRB,* 860 F.2d 471, 474 (D.C.Cir.1988) (italics deleted). The D.C. Circuit has reasoned that if the scope of the bargaining unit were a mandatory subject, "an employer could use its bargaining power to restrict (or extend) the scope of union representation in derogation of employees' guaranteed right to representatives of their own choosing." *Idaho Statesman v. NLRB,* 836 F.2d 1396, 1400–01 (D.C.Cir. 1988) (footnote omitted). While not necessary to the result here, these decisions are

---

**5.** *See NLRB v. Maine Caterers, Inc.,* 732 F.2d 689, 690–91 (1st Cir.1984) (Breyer, J.) (citing *Medo* in concluding that company violated Act by negotiating directly with employees, without union's consent, on matter affecting their compensation); *NLRB v. General Elec. Co.,* 418 F.2d 736, 755 (2d Cir.1969) ("The vice that *Medo* sought to avoid was the practice of undermining the authority of the union's bargaining representatives through direct dealings with the locals or employees they represented."); *Hajoca Corp. v. NLRB,* 872 F.2d 1169, 1176 (3d Cir.1989) (company committed unfair labor practice when it presented wage-freeze proposal directly to employees); *Szabo v. U.S. Marine Corp.,* 819 F.2d 714, 718 (7th Cir.1987) ("[T]he employer is not to go behind the union's back and negotiate with individual workers, nor otherwise to undermine the union's status as exclusive bargaining representative"); *Queen Mary Restaurants Corp. v. NLRB,* 560 F.2d 403, 407–08 (9th Cir.1977) (applying *Medo* to find that employer violated Act by meeting directly with employees to discuss increases in their seniority).

consistent with our analysis of PSCs because they turn on the same principle—a proposal that weakens the union's status as the exclusive bargaining representative is permissible. *See McClatchy Newspapers,* 964 F.2d at 1159–60 (Edwards, J., concurring) (concluding that *Toledo* and *Idaho Statesman* emanate from *Borg–Warner*).

## C

The precedent barring direct dealing is a formidable hurdle that Retlaw makes no effort to surmount. Instead, Retlaw rests entirely on an analogy to free agency in professional sports. As Retlaw sees it, PSCs resemble free-agent sports contracts and are equally necessary to attract and retain top talent in the television news industry. The lone decision that Retlaw cites for this proposition, *Silverman v. Major League Baseball Player Relations Committee, Inc.,* 67 F.3d 1054 (2d Cir. 1995), held that free agency in baseball was a mandatory subject. Retlaw asserts that PSCs are similar to free agency provisions and should be viewed as a mandatory subject of collective bargaining. A PSC may resemble free agency in that it is premised on individual negotiations on terms and conditions of employment between Retlaw and an employee, with no role for the union. However, individual bargaining with employees on core employment matters was not at issue in *Silverman.* The players raised no claim of infringement on their right to bargain collectively through their union. The owners, by contrast, were the side contending that free agency interfered with their ability to negotiate through their exclusive representative. *Id.* at 1060. The Second Circuit, consequently, was faced only with the asserted right of an *employer* to bargain collectively.

Significantly, as the district court in *Silverman* observed, employers' and employees' rights in this respect are not interchangeable: "[T]he statutory right to join collective bargaining units belongs to employees, not to employers. . . . In other words, the term 'employer union' for collective bargaining purposes is not meaningful." *Silverman v. Major League Baseball Player Relations Comm., Inc.,* 880 F.Supp. 246, 256 (S.D.N.Y.1995). To bargain collectively through a single representative, multiple employers must indicate an unequivocal intent from the outset to negotiate on that basis, and the union must agree to the arrangement. *Charles D. Bonanno Linen Serv., Inc. v. NLRB,* 454 U.S. 404, 419–20, 102 S.Ct. 720, 70 L.Ed.2d 656 (1982) (Stevens, J., concurring). The ability of multiple employers to act through a single representative, therefore, depends entirely on the whim of the union. The lack of coextensive collective-bargaining rights for employers best explains, as the union here emphasized at oral argument, why *Silverman* did not discuss *Toledo* or individual bargaining with employees. *Cf. McClatchy Newspapers, Inc. v. NLRB,* 131 F.3d 1026, 1033 n. 5 (D.C.Cir.1997) (noting that NLRB has not applied *Toledo* where disputed provision preserves role for union as bargaining agent), *cert. denied,* — U.S. ——, 118 S.Ct. 2341, 141 L.Ed.2d 712 (1998).

Because the direct dealing inquiry has no counterpart on the employer side of the equation, we question whether the result in *Silverman* would have been the same if that issue had been presented. This might have changed the calculus considerably. *Cf. id.* at 1033–35 (NLRB did not err in narrowing right of employers to implement mandatory terms after impasse where proposal at issue, if implemented, would have resulted in "de-collectivization" of collective bargaining). In this sense, *Silverman* cannot fairly be extended beyond its facts. To reiterate, we must focus here on any effect on the union's position as exclusive bargaining representative. *Borg–Warner,* 356 U.S. at 350, 78 S.Ct. 718. Even if we accept the rough analogy between PSCs and free agency, the question of any impact on the union's role was not decided or even presented in *Silverman.*

We would pause in any event before reading much of *Silverman* into this case. Collective bargaining in professional sports is shaped by market forces unique to that realm:

> On the one hand, the talent of an individual athlete can provide him with extraordinary bargaining power, but on the other hand, a player may sell his talent only to a circumscribed group of owners, who have something akin to monopoly power in the sport at issue. These circumstances in professional sports have given rise to the development of the reserve/free agency system, which, perhaps not surprisingly, is quite different from other models of collective bargaining in less specialized and unique industries.

*Silverman*, 880 F.Supp. at 255–56. Because of these differences, analysis of mandatory and permissive subjects in professional sports is not necessarily amenable, as Retlaw suggests, to wholesale application in other economic spheres. Retlaw certainly has not shown that the PSC in broadcasting is on par with free agency's influence in baseball in setting players' salaries and other contract terms.

 Under our narrow standard of review, we are not quick to override the NLRB's judgment that a matter is a permissive subject of collective bargaining. The NLRB's finding that the PSC provision was permissive withstands judicial scrutiny because it is a "reasonably defensible" construction of the Act. *Ford Motor Co. v. NLRB*, 441 U.S. 488, 497, 99 S.Ct. 1842, 60 L.Ed.2d 420 (1979). Therefore, we hold that the NLRB's conclusion that Retlaw committed an unfair labor practice by declaring an impasse and implementing part of its final contract proposal was not error.[6]

6. Because the NLRB properly found that no valid impasse existed in this case, we have no occasion to address the scope of Retlaw's right to implement its final contract proposal after impasse. *Cf. Colorado–Ute Elec. Ass'n, Inc. v. NLRB*, 939 F.2d 1392 (10th Cir.1991)

## IV

 The remaining issue before us is whether Retlaw committed an unfair labor practice when it refused to produce to the union copies of all then-existing PSCs. The law governing information requests in the collective bargaining context is also well settled. An employer's duty to bargain collectively in good faith includes, in the absence of a valid reason that supports non-disclosure, an obligation to produce information "relevant to the union's collective bargaining duties." *NLRB v. Realty Maintenance, Inc.*, 723 F.2d 746, 747 (9th Cir.1984). Relevancy for this purpose is assessed based on a "liberal, 'discovery-type standard.'" *Id.* (citation omitted). Specifically, the employer must "supply the union, upon request, with sufficient information to enable the [union] to understand and intelligently discuss the issues raised in bargaining permitted by the collective bargaining contract." *San Diego Newspaper Guild, Local No. 95 v. NLRB*, 548 F.2d 863, 866 (9th Cir.1977). "Information pertaining to the wages, hours and working conditions of employees in the bargaining unit is so intrinsic to the core of the employer-employee relationship that it is considered presumptively relevant." *WCCO Radio, Inc. v. NLRB*, 844 F.2d 511, 514 (8th Cir.1988) (citation and internal quotation marks omitted). *Accord Press Democrat Publ'g Co. v. NLRB*, 629 F.2d 1320, 1324 (9th Cir.1980).

 In tacit recognition of this authority, Retlaw does not dispute the NLRB's finding that the union sought relevant information that was presumptively discoverable. Instead, Retlaw contends that disclosure of the PSCs would have violated the employees' privacy and confidentiality rights. An interest in privacy or confidentiality can support an employer's

(declining to enforce NLRB order finding that employer's decision to implement merit wage plan after impasse was an unfair labor practice). Like the NLRB, we voice no opinion on this issue.

refusal to produce information to a bargaining representative. *Detroit Edison Co. v. NLRB*, 440 U.S. 301, 314–15, 99 S.Ct. 1123, 59 L.Ed.2d 333 (1979). When raising confidentiality as a justification for non-disclosure, the employer has the burden of establishing a legitimate claim of confidentiality. *Resorts Int'l Hotel Casino v. NLRB*, 996 F.2d 1553, 1556 (3d Cir. 1993); *Mary Thompson Hosp. v. NLRB*, 943 F.2d 741, 747 (7th Cir.1991). If this showing is made, then disclosure broadly hinges on "whether an employee's right to maintain the confidentiality of certain relevant information outweighs a union's statutory right to obtain that information." *Salt River Valley Water Users' Ass'n v. NLRB*, 769 F.2d 639, 642 (9th Cir.1985).

There is no need to strike a balance here, because Retlaw has not shown any need for confidentiality. The administrative law judge found that there was no evidence that any employees ever asked that their PSC not be disclosed, that Retlaw ever assured employees that this information would be kept confidential, or that the union would likely use this data for an improper purpose. These findings, which are unchallenged, are enough to support the NLRB's decision on this issue. *Id.* at 642–43 (enforcing NLRB order directing disclosure of personnel file where employer failed to show any commitment to employees that it would keep that information in confidence). Moreover, Retlaw does not point to anything in the record that would suggest that particularly sensitive information would have been disclosed. This is ultimately impossible to evaluate because copies of the PSCs are not contained in the record. In any event, by asserting confidentiality, Retlaw assumed the burden of coming forward with evidence to back its position, and it has not done so.

■ The conclusion that confidentiality in this case was a red herring is consistent with NLRB precedent turning back similar claims. The NLRB stressed here that it had "previously rejected the same arguments advanced by [Retlaw]—i.e., that the disclosure of similar wage information would violate employee confidentiality and privacy interests—when raised by other employers in the broadcasting industry." *Retlaw Broad. Co.*, 324 N.L.R.B. No. 18, 324 NLRB 138 n. 1, 1997 WL 428577 (1997) (collecting cases). *See also King Broad. Co.*, 324 N.L.R.B. No. 57, 1997 WL 566244 (1997) (rejecting, shortly after decision in *Retlaw*, claim of confidentiality as ground for non-disclosure of PSCs). Retlaw has not set forth any reason for overturning the NLRB's determination that its refusal to produce copies of PSCs to the union was an unfair labor practice. We hold, therefore, that the NLRB did not err.[7]

We conclude that the NLRB correctly interpreted the Act and its findings of fact are supported by substantial evidence. Retlaw's petition for review is denied and the NLRB's cross-application for enforcement is granted.

ORDER ENFORCED.

---

7. In support of its position on this issue, Retlaw contends that California law bars disclosure of PSCs on privacy grounds. Even if California law would have that effect, any state-law authority must yield to the Act due to federal preemption. *Brown v. Hotel & Restaurant Employees & Bartenders Int'l Union Local 54*, 468 U.S. 491, 503, 104 S.Ct. 3179, 82 L.Ed.2d 373 (1984). Retlaw's assertion that its employees' PSC information was confidential under *United States Department of Defense v. Federal Labor Relations Authority*, 510 U.S. 487, 114 S.Ct. 1006, 127 L.Ed.2d 325 (1994) is also unconvincing. That case dealt with whether the home addresses of a particular group of federal employees were protected from disclosure under an exception in the Freedom of Information Act. The NLRB has specifically rejected a confidentiality claim based on *United States Department of Defense. See Pacific Physicians Servs., Inc.*, 315 N.L.R.B. 108, 1994 WL 541495 (1994). Retlaw does not challenge the NLRB's interpretation of that decision.