NEW JERSEY BELL TELEPHONE
COMPANY, Petitioner,

v.

NATIONAL LABOR RELATIONS
BOARD, Respondent.

No. 83–3069.

United States Court of Appeals,
Third Circuit.

Argued Sept. 27, 1983.

Decided Nov. 7, 1983.

James F. Brady (argued), Newark, N.J.,
for petitioner.

Helen Morgan, Daniel R. Pollitt (argued),
Attys., William A. Lubbers, Gen. Counsel,
John E. Higgins, Jr., Deputy Gen. Counsel,
Robert E. Allen, Associate Gen. Counsel,
Elliott Moore, Deputy Associate Gen. Counsel, N.L.R.B., Washington, D.C., for respondent.

Before ALDISERT and BECKER, Circuit
Judges, and POLLAK, District Judge.*

## OPINION OF THE COURT

ALDISERT, Circuit Judge.

In this petition to review and cross-application for enforcement of a decision and
order of the National Labor Relations
Board, we are asked to decide whether the
New Jersey Bell Telephone Company may
properly condition release of personal information contained in employee attendance
records to a labor organization on employee
consent. The Board found that the Company violated § 8(a)(5) and (1) of the National
Labor Relations Act, 29 U.S.C. § 158(a)(5),
and (1) (1976), by refusing to release information necessary in processing a grievance
when its employees declined to authorize
disclosure. Because we conclude that the
absence and tardiness records are confiden-

* Honorable Louis H. Pollak, United States District Judge for the Eastern District of Pennsyl- vania, sitting by designation.

tial under the terms of the Company's Employee Privacy Protection Plan, the petition to review is granted and the cross-application for enforcement denied.

## I.

In early 1980, New Jersey Bell Telephone Company instituted its Employee Privacy Protection Plan, which provides that the Company will not release personal information about its employees to persons outside the Company without employee authorization.[1] This dispute arose when three employees reported to work late on December 3, 1980 and were marked tardy. In the process of determining whether to file a grievance, the Communication Workers of America, Local 1023, AFL–CIO, requested the Company to furnish it with the absence and tardiness records of the three employees. Relying on its Privacy Plan, the Company advised the Union that it could have the information only if the employees authorized its release. When the Company sought authorization, however, the employees, at the Union's behest, withheld their consent, and consequently the information was not disclosed.

Although the grievance was eventually settled, the Union filed an unfair labor practice charge with the Board, contending that it was unconditionally entitled to the records. A hearing before an Administrative Law Judge followed, during which the intimate and highly personal nature of the information contained in the employees' absence and tardiness records was revealed. The records disclosed that reasons given for employee absences included colitis, insertion of urethral tubes, vaginal infections, scalded rectal areas and heart problems.

The ALJ dismissed the complaint in its entirety, concluding that the records contained confidential information under the teachings of both Supreme Court and Board precedent and therefore the Company could properly require employee consent prior to disclosure to the Union. The Board reversed, agreeing with the ALJ that disclosure of confidential information may be conditioned upon employee consent, but disagreeing as to the confidentiality of the absence and tardiness records. As this issue of confidentiality requires us to interpret and apply a legal precept, our review is plenary. *Allied Chemical and Alkali Workers of America v. Pittsburgh Plate Glass Co.*, 404 U.S. 157, 182, 92 S.Ct. 383, 399, 30 L.Ed.2d 341 (1971); *Universal Minerals, Inc. v. C.A. Hughes & Co.*, 669 F.2d 98, 102 (3d Cir.1981).

## II.

As a general rule, an employer must provide a bargaining representative with relevant information necessary for the proper performance of its duties. *NLRB v. Acme Industrial Co.*, 385 U.S. 432, 435–36, 87 S.Ct. 565, 567–68, 17 L.Ed.2d 495 (1967).

---

1. The Plan provides in relevant part:
   Release of personal information about any employee to those within or outside the Bell System is carefully controlled.

   .     .     .

   Non-sensitive information that the Company will verify includes only your name, employment status (active or inactive), employment dates, classification (e.g., regular or part-time), job title and Department. Such "Directory" information, as well as your work location, home address, telephone number and dates of attendance at work, may be released to a law enforcement agency upon lawful demand when such information is required for bona fide law enforcement purposes.
   In general, the Company will not verify and it will not release other personal information about you to those outside the Bell System, unless you authorize the Company in writing to do so, or unless the Company is required by legal process to do so; or to comply with a lawful investigation by a government agency, or in connection with any proceeding or action affecting the Company's interests including its defense to any employment-related matter.
   App. at 98a–1.

The failure to provide such information constitutes a violation of § 8(a)(5) and (1) of the Act, 29 U.S.C. § 158(a)(5), (1).[2]

This rule, however, is not absolute. The Supreme Court has recognized a limited exception for information that is confidential in nature. *Detroit Edison Co. v. NLRB*, 440 U.S. 301, 99 S.Ct. 1123, 59 L.Ed.2d 333 (1979). In *Detroit Edison*, the Court held that an employer did not violate the statutory duty to bargain in good faith by resisting an unconsented-to disclosure of individual employee aptitude test results to a union that was processing a grievance. The Court relied on three factors: (1) the sensitive nature of the information sought; (2) the minimal burden that a requirement of employee consent would impose on the union; and (3) the lack of evidence that the employer had fabricated concern for employee confidentiality only to frustrate the union in the discharge of its responsibilities. *Id.* at 319–20, 99 S.Ct. at 1133–34. The Court found that any possible impairment of the union's function in processing grievances is more than justified by the interests served in conditioning disclosure on the consent of the very employees whose grievances are being processed. *Id.* at 319, 99 S.Ct. at 1133. Those interests included the employees' privacy interests. *Id.* at 318, 99 S.Ct. at 1132.

■ To determine whether release of the records here may be conditioned on employee consent, we proceed by addressing each of the *Detroit Edison* factors. First, regarding confidentiality, it can scarcely be argued that the information contained in the records is not sensitive or confidential in nature. As we have indicated, many of the reasons given in the absence and tardiness records are of a highly personal nature. The records show, for example, that one Company employee suffered from diarrhea for two days, and was absent for an additional five days because in "treating for hemroids [sic] [, the employee] used too hot of water and too much epsom salts, [and] burnt the skin." Supp. app. to brief for the Board at 8a. It is difficult to imagine more intimate or personal employee data.

Second, the Company's requirement that releases be obtained from the employees is the same burden that was imposed on the union in *Detroit Edison* and held to be acceptable. We conclude, therefore, that this requirement permissibly places only a minimal burden on the Union. In addition, we note that it was not the Company's consent requirement but rather the Union's direction that consent be withheld that prevented the Union from obtaining the information it sought.

Finally, there is no evidence that the Privacy Plan was instituted to frustrate the Union in its role as employee representative. Importantly, the Plan applies to anyone seeking information about Company employees. Further, the Plan embodies, on its face, the laudable policy of protecting the employees' privacy rights. Under *Detroit Edison*, therefore, we conclude that the absence and tardiness records are confidential and the Company need not release them to the Union without employee consent.

We reach the same conclusion after considering the Board's own precedent. In

---

**2.** Section 8(a)(5) of the National Labor Relations Act provides that "[i]t shall be an unfair labor practice for an employer to refuse to bargain collectively with the representatives of his employees...." 29 U.S.C. § 158(a)(5). Section 8(a)(1) makes it an unfair labor practice for an employer to interfere with, restrain or coerce employees in the exercise of the right to self-organization, to form, join or assist labor organizations, to bargain collectively and to engage in concerted activities for the purpose of collective bargaining or other mutual aid or protection. 29 U.S.C. § 158(a)(1). Accordingly, a violation of section 8(a)(5) is also a violation of section 8(a)(1). *See United Steelworkers of America, AFL–CIO–CLC v. NLRB*, 530 F.2d 266, 270 n. 6 (3d Cir.), *cert. denied*, 429 U.S. 834, 97 S.Ct. 100, 50 L.Ed.2d 100 (1976).

*Johns-Manville Sales Corp.,* 252 N.L.R.B. 368 (1980), the Board held that an employer committed no unfair labor practice by refusing to disclose to a union the identities of those employees suffering from a certain medical disorder without first securing employee consent. The Board found a "legitimate aura of confidentiality" in the identities of the affected employees. *Id.* We perceive no difference between the Johns-Manville employees and the employees here. In each case, the information requested contains, in part, material which reflects upon the medical condition of certain employees. Furthermore, the Board in *Johns-Manville* noted that the employer's refusal was made in good faith as it attempted to accommodate the union by allowing disclosure on consent. *Id.* New Jersey Bell has made the same good faith attempt at accommodation.

The Board argues that *Detroit Edison* and *Johns-Manville* may be distinguished because each involved professionally-developed information. Such a purported distinction borders on the whimsical. Nothing in either opinion, or in the realm of sound reason, indicates that the classification of information as confidential turns on whether it was professionally developed. To the contrary, *Detroit Edison* indicates that the proper inquiry is into the nature of the information sought and not its source. *See* 440 U.S. at 318, 99 S.Ct. at 1132.

We do not think the issue here is even close. Supreme Court precedent, Board precedent, and common sense all militate against the Board's decision in this case. The Board would have been well-advised to have accepted the perceptive analysis of the ALJ:

> [By directing the involved employees not to sign releases, the Union] intentionally placed itself in the way of attaining its own legitimate objective for there is no evidence in the record that the employees had any real objections to the Union representative gaining access to the material

in question and it would have been a simple matter for the Union to obtain releases, to gain access to the materials it needed and to pursue the grievance procedure to a proper conclusion. Instead, it preferred to play games, to challenge the employer's Employee Privacy Protection Plan, a policy which, on its face, appears to be legitimately concerned with employees' rights to privacy and not in any way discriminatorily motivated.

App. at 153a.

### III.

The Company's petition for review of the Board's order will be granted and the Board's cross-application for enforcement will be denied.[3]

---

**3.** In the view we take, it is unnecessary to reach the Company's other contentions.