Estela V. **RODRIGUES**

v.

**DePASQUALE BUILDING AND REALTY CO.** et al.

v.

**Spino Brothers, Inc.**

No. 2005–216–Appeal.

Supreme Court of Rhode Island.

June 22, 2007.

Lauren E. Jones, Esq., Providence, for Petitioner.

Rajaram Suryanarayan, Esq. (for Spino Bros.), Raymond LaFazia, Esq., Providence, for Respondent.

Present: WILLIAMS, C.J., and GOLDBERG, FLAHERTY, and SUTTELL, JJ.

## OPINION

Chief Justice WILLIAMS, for the Court.

In this wrongful death and negligence action, the third-party defendant, Spino Brothers, Inc. (Spino Bros.), appeals from an order granting the third-party plaintiff's, DePasquale Building and Realty Company (DePasquale Bldg.), motion for a new trial. DePasquale Bldg. settled the underlying tort suit with the plaintiff, Estela V. Rodrigues (plaintiff), for the death of her husband, Carlos Rodrigues (Carlos), after DePasquale Bldg. sought indemnification from Spino Bros. pursuant to the indemnity clause of a previously executed contract. Central to Spino Bros.'s appeal is its obligation to indemnify DePasquale Bldg. Additionally, DePasquale Bldg. cross-appeals, contending that the trial justice erred in denying its post-verdict motion for entry of judgment with respect to liability and permitting the issue of Spino Bros.'s negligence to be litigated at a new trial. For the reasons set forth herein, we reverse in part and sustain in part the judgment of the Superior Court.

**I**

**Facts and Travel**

**A**

**The Contract**

In 1998, the City of Central Falls retained DePasquale Bldg. as general contractor to build the Ella Risk School. DePasquale Bldg., in turn, subcontracted with Spino Bros. for the project's masonry work. To complete the project, Spino Bros. used several masons, including Carlos, who served as a lead mason on the project.

Under the resulting contract between DePasquale Bldg. and Spino Bros., Spino Bros. agreed to hold DePasquale Bldg.

"free of any and all claims of any nature arising out of the performance of the work by [Spino Bros.] under this contract, and shall indemnify [it] * * * with respect to all such claims." The contract further provided that Spino Bros.:

"shall indemnify and save harmless [DePasquale Bldg.] * * * against loss or expense by reason of any liability imposed by law upon [DePasquale Bldg.] for damage because of bodily injuries, including death, at any time resulting to any persons or on account of damages to property arising out of or in consequence of the performance of this work, whether such injuries to persons or damage to property are due or claimed to be due to any negligence, of [Spino Bros.], the Owner, [DePasquale Bldg.], Architect, or their employees or agents or any other person."

Spino Bros. additionally promised that if:

"any person or persons at any time assert a claim or institute any action, suit or proceeding against [DePasquale Bldg.] involving the manner or sufficiency of the performance of the work required under this Agreement, [Spino Bros.] upon [DePasquale Bldg.'s] request shall promptly take over the defense of any such claim, action, suit or proceeding at his own cost, and will indemnify [DePasquale Bldg.] and save [it] harmless from and against any and all loss, damage, liability, judgments, losses, costs, and expenses (including, without limitations, attorney's fees and disbursements) arising out of or in connection with any such claim, action, suit or proceeding."

Finally, the agreement provided that "[t]he invalidity of any provision of this agreement shall not affect the balance of the agreement which shall continue to be enforceable." Pursuant to this contract, Spino Bros. commenced work in 1998 at the Ella Risk School site.

## B

### The Accident

By January 12, 1999, the school construction project was about 50 percent complete. The L-shaped, three-story building had a steel frame, a concrete block interior wall, and a brick veneer exterior. While some of the concrete walls already had been erected, a number of unenclosed steel frames remained. In construction parlance, such unenclosed areas are referred to as bays. Most open bays were secured with cables to prevent workers from falling from the open structures while building block walls. Seven bays, however, were used as loading docks and, thus, workers needed unrestricted access to those areas. Because securing such areas with cables could become impractical given the difficulty of removing the wires every time materials had to be loaded, DePasquale Bldg. used two-by-four-inch wooden boards as temporary safety rails.

Michael LaValle lived fifty or sixty feet away from the school site and frequently watched the construction's progress. On January 12, 1999, at approximately 8 a.m., LaValle was looking out his living room window when he saw Carlos remove the wooden safety rails from an open third-floor bay. Minutes later, Carlos began losing his balance and started waving his arms to control his body. Unable to maintain his balance, Carlos fell forward and plummeted from the third floor. He later died from injuries suffered in the fall.

## C

### Safety Practices

Spino Bros.'s contract with DePasquale Bldg. required that Spino Bros. comply

with Occupational Safety and Health Administration (OSHA) regulations. Accordingly, Carl Lemos, an OSHA compliance officer, testified about DePasquale Bldg. and Spino Bros.'s required safety practices and their corresponding standards of care. Lemos maintained that DePasquale Bldg. carried the overall responsibility of ensuring safe work practices at the construction site, but that each subcontractor also had a responsibility to make its own work areas safe. Despite DePasquale Bldg.'s responsibility to maintain a safe construction site, Lemos testified that, under OSHA, DePasquale Bldg. had no control over Spino Bros.'s employees.

DePasquale Bldg.'s President, Mark DePasquale (DePasquale), also testified that his company was responsible for fall protection and also maintained that subcontractors, such as Spino Bros., were responsible for maintaining existing fall protection. DePasquale admitted that his employees removed steel cable from the area where Carlos fell and replaced it with wooden boards, but explained that such action was an industrywide practice enabling workers to load supplies. Spino conceded that such practices also satisfied OSHA's safety regulations. According to DePasquale Bldg.'s superintendent, Donald Pedro, despite his instruction that workers should not remove safety barriers without first obtaining permission, Carlos removed the barrier, apparently without permission.

To rebut DePasquale's testimony, Spino Bros. presented John P. O'Donovan, corporate safety director for Gilbane Building Company, who opined that a reasonable general contractor would not have removed the steel cable without replacing it. According to O'Donovan, it was foreseeable that the wooden guardrail would be removed. Spino Bros.'s president, Michael Spino (Spino), further protested that removing the steel cables was unnecessary given that the area was not being used as a loading dock the day of Carlos's accident.

DePasquale Bldg. also introduced into evidence Spino Bros.'s own safety manual, which specified that if a worker removed a wooden barrier, he or she was required to implement a secondary safety measure, including wearing a safety harness. Nevertheless, contradicting evidence was introduced at trial with respect to whether Carlos had safety training while in Spino Bros.'s employ. Spino maintained that Carlos received individualized safety training, but Michael Tessier, a Spino Bros. employee, testified that Spino Bros. had no mandatory safety training until after Carlos's accident. Tessier further testified that he could not recall any meeting before Carlos's fall when safety was discussed with Spino Bros. employees. Indeed, Spino conceded that his company never showed Carlos how to wear a safety harness.

Contradicting evidence was also introduced at trial regarding the bricklaying technique Spino Bros.'s employees were instructed to engage in the day of Carlos's accident. Before Carlos began work on the Ella Risk School project, he was trained to work on scaffolding to perform masonry work. Scaffolding along a building's exterior enabled masons to lay exterior brick walls from outside the building. Spino Bros.'s project manual and its contract with DePasquale Bldg. specified that scaffolding shall be erected so masons could block up bays without using the overhand bricklaying technique, a method by which brick is laid from inside rather than outside the building.[1]

---

1. Overhand bricklaying is "the process of laying bricks and masonry units such that the surface of the wall to be jointed is on the opposite side of the wall from the mason,

At trial, Spino testified that employees working on this job site never were trained to perform overhand bricklaying because his company did not use such a method for that job. Spino's trial testimony, however, contradicted his previous deposition testimony that his company used the overhand bricklaying technique, but only in the area where Carlos fell.

Despite Spino's assertion that his company did not perform overhand bricklaying, Spino Bros.'s safety manual provides specific instructions regarding that method. Under Spino Bros.'s guidelines, masons engaged in overhand bricklaying "must be protected from falling by guardrails, nets, personal fall arrest systems or must work in a controlled access zone." Although DePasquale Bldg. had the overall responsibility of ensuring safe work practices at the construction site, Spino candidly acknowledged that general contractors, such as DePasquale Bldg., did not train Spino Bros.'s employees in the overhand bricklaying method because that technique was unique to masons.

## D

### The Lawsuits

On December 15, 1999, plaintiff, individually and in her capacity as mother and guardian ad litem of Alexandra V. Rodrigues and as administratrix of Carlos's estate, filed a wrongful death and negligence action against DePasquale Bldg. The plaintiff alleged that DePasquale Bldg. created an unsafe work environment by failing to properly supervise the Ella Risk School's construction. DePasquale Bldg., in turn, filed a third-party complaint against Spino Bros., seeking, *inter alia*, indemnification

from Spino Bros. for any damages DePasquale Bldg. might owe to plaintiff.

Thereafter, Spino Bros. moved for summary judgment, arguing that the indemnity agreement between DePasquale Bldg. and Spino Bros. was void because it required Spino Bros. to indemnify DePasquale Bldg. for DePasquale Bldg.'s own negligence. Denying Spino Bros.'s motion for summary judgment, the hearing justice ruled that, although the provision purporting to indemnify DePasquale Bldg. for its own negligence was void pursuant to G.L. 1956 § 6–34–1,[2] the contract itself was enforceable.

The plaintiff's wrongful death action then was severed from DePasquale Bldg.'s third-party indemnification action against Spino Bros., and was tried first. After a weeklong trial on plaintiff's wrongful death claim against DePasquale Bldg., the jury returned a verdict in plaintiff's favor. The jury's verdict apportioned 10 percent of the negligence to Carlos, 20 percent to Risk and Safety Management—the safety management company for the project— and 70 percent to DePasquale Bldg. After final judgment entered for approximately $3.1 million, DePasquale Bldg. appealed to this Court. While that matter was pending on appeal, DePasquale Bldg. settled with plaintiff. On June 30, 2003, plaintiff entered into a stipulation dismissing her wrongful death action.

Thereafter, the second half of the severed trial—DePasquale Bldg.'s third-party action for indemnity against Spino Bros.— began. Undeterred by the hearing justice's denial of its earlier motion, Spino Bros. argued again in a motion *in limine* that it

---

requiring the mason to lean over the wall to complete the work." 29 C.F.R. § 1926.450(b) at 275 (2006).

**2.** General Laws 1956 § 6–34–1 invalidates construction contract provisions that purport to indemnify the promisee for personal injury or property damage caused by or resulting from the promisee's own negligence.

could not be held to indemnify DePasquale Bldg. because the indemnity agreement between the two parties was void in its entirety because it provided for indemnification for DePasquale Bldg.'s own negligence, in violation of § 6–34–1. The hearing justice denied Spino Bros.'s motion *in limine*, ruling that disposition of the motion was governed by the law-of-the-case doctrine. Alternatively, the hearing justice also noted that she would be inclined to deny the motion regardless of the law-of-the-case doctrine, ruling that "[a] plain reading of [§ 6–34–1] indicates that the General Assembly did not intend construction contracts to be void if they contained improper indemnity provisions, but rather only the offending provisions or clauses were rendered void."

A jury trial commenced on February 23, 2004. The trial justice made it clear from the outset that the only issue for the jury to resolve was DePasquale Bldg. and Spino Bros.'s respective degree of fault for Carlos's death, if any. The jury was instructed, in making this assessment, not to consider any possible negligence of Carlos.

At the close of all the evidence, Spino Bros. moved for judgment as a matter of law pursuant to Rule 50(a) of the Superior Court Rules of Civil Procedure, arguing that DePasquale Bldg. failed to establish Spino Bros.'s standard of care with respect to fall protection and training certification, failed to show a deviation from such a standard of care, and did not demonstrate proximate cause between Spino Bros.'s alleged failure to train Carlos and Carlos's fall. After hearing the arguments of counsel, however, the trial justice denied Spino Bros.'s motion. Contrary to Spino Bros.'s contention, she ruled that, viewing the evidence in the light most favorable to De-

Pasquale Bldg., there was sufficient evidence for a jury to determine that Spino Bros. was negligent in failing to train Carlos and that, but for Spino Bros.'s negligence, Carlos would have been protected from falling. The trial justice further found that the OSHA regulations evidenced Spino Bros.'s standard of care.

On February 27, 2004, the jury returned its verdict, finding neither Spino Bros. nor DePasquale Bldg. negligent. As a result of the jury verdict, both Spino Bros. and DePasquale Bldg. pressed the trial justice to enter judgment in its favor. Spino Bros. argued that its actions were not the proximate cause of Carlos's injuries or death and that the indemnity agreement was void. DePasquale Bldg. argued that because it was found to be zero percent at fault, Spino Bros. was liable for the full settlement amount pursuant to the indemnity agreement. The trial justice disagreed with DePasquale Bldg.'s interpretation and ruled in Spino Bros.'s favor, holding that the contract made Spino Bros. liable solely for its own negligence and the negligence of its employees, other than Carlos. Because the jury found that Spino Bros. was not negligent, DePasquale Bldg. was not entitled to indemnity; therefore, the trial justice entered judgment in Spino Bros.'s favor.

Dissatisfied, DePasquale Bldg. moved for a new trial or, alternatively, to alter or amend the judgment.[3] Granting DePasquale Bldg.'s new-trial motion, the trial justice described her shock at the jury verdict: "Reading of the jury verdict, frankly, was one of those courtroom moments of somewhat universal incredulity." She further explained that, in her judgment, reasonable jurors could not have found that

---

**3.** Spino Bros. also renewed its motion for judgment as a matter of law, which the trial justice denied, reasoning that there was suffi-

cient evidence of the standard of care introduced into evidence.

the parties were not negligent.[4] Unlike the jury, the trial justice found that Spino Bros. failed to properly train Carlos in fall protection, safety, and the overhand brick-laying technique, and failed to ensure that the appropriate fall protection system was in place. She further found that Carlos would not have removed the barrier or would have arranged for an alternate form of fall protection and would have been protected if Spino Bros. had properly trained him. Spino Bros. timely appealed from that order. Thereafter, DePasquale Bldg. cross-appealed, arguing that the trial justice misconstrued the contract's indemnity clause.

## II

### Analysis

On appeal, Spino Bros. and DePasquale Bldg. both allege numerous errors at various stages of these proceedings below. At the outset, Spino Bros. argues that the hearing justice erred by denying its pretrial motion for summary judgment. Spino Bros. also faults the trial justice for denying its motion for judgment as a matter of law. In its cross-appeal, DePasquale Bldg. argues that the trial justice erred in denying its post-verdict motion for entry of judgment with respect to liability. Finally, Spino Bros. argues that the trial justice erred by granting DePasquale Bldg.'s motion for a new trial. DePasquale Bldg. similarly argues that the trial justice erred by granting Spino Bros. a new trial.

### A

### Pretrial Motion for Summary Judgment

█ Spino Bros. first argues on appeal that the hearing justice erred in denying its motion for summary judgment. According to Spino Bros., the indemnity agreement between it and DePasquale Bldg. was void pursuant to § 6–34–1. De-Pasquale Bldg., however, argues that, although one specific provision of the indemnity agreement may be prohibited by law, the remainder is valid.

█ On appeal, this Court reviews summary judgment motions *de novo,* applying the same standards as the hearing justice. *Ritter v. Mantissa Investment Corp.,* 864 A.2d 601, 604 (R.I.2005). Summary judgment must be denied if there are any genuine issues of material fact or if the moving party cannot prevail as a matter of law. Super. R. Civ. P. 56(c). Indeed, "only if the case is legally dead on arrival should the court take the drastic step of * * * granting summary judgment." *Mitchell v. Mitchell,* 756 A.2d 179, 185 (R.I.2000).[5]

█ Furthermore, this Court reviews questions of statutory interpretation *de novo* and affords clear and unambiguous language its plain and ordinary meaning. *Park v. Rizzo Ford, Inc.,* 893 A.2d 216, 221 (R.I.2006).

Section 6–34–1(a) provides, in relevant part:

---

4. After the trial justice's ruling on DePasquale Bldg.'s motion for a new trial, Spino Bros. filed a motion for clarification of the trial justice's ruling. The trial justice ruled that Spino Bros. could raise the issue of DePasquale Bldg.'s negligence in the new trial.

5. Citing *Chesapeake Paper Products Co. v. Stone & Webster Engineering Corp.,* 51 F.3d

1229 (4th Cir.1995), DePasquale Bldg. argues that "the denial of summary judgment is not reviewable on appeal after a full trial and final judgment on the merits of the case." *Id.* at 1234. In view of our decision herein, we need not address such a contention at this time.

"A covenant, promise, agreement, or understanding in, or in connection with or collateral to, a contract * * * purporting to indemnify the promisee, the promisee's independent contractors, agents, employees, or indemnitees against liability for damages arising out of bodily injury to persons or damage to property proximately caused by or resulting from the negligence of the promisee, the promisee's independent contractors, agents, employees, or indemnitees, is against public policy and is void * * *."

Spino Bros. urges this Court to invalidate its indemnity agreement with DePasquale Bldg. in its entirety pursuant to this statute because it requires Spino Bros. to indemnify DePasquale Bldg. for DePasquale Bldg.'s own negligence. We are unconvinced.

The plain language of § 6–34–1 invalidates the problematic promise itself, not the agreement in its entirety. Indeed, in *Cosentino v. A.F. Lusi Construction Co.*, 485 A.2d 105 (R.I.1984), this Court explained:

> "The clear and direct mandate of § 6–34–1 bars the enforcement of that portion of the indemnification clause that attempts to indemnify [the contractor] for any negligence on its part. However, there is nothing in § 6–34–1 that bars [the contractor] from attempting to secure indemnification from [the subcontractor] for claims resulting from negligence on the part of [the subcontractor]." *Id.* at 107.

In this case, the parties even contemplated such a scenario. The contract itself provides that the "invalidity of any provision of this agreement shall not affect the balance of the agreement which shall continue to be enforceable." As we noted in *Cosentino,* absent a public policy violation, "we perceive no reason why the expressed in-

tent of the parties in a contract * * * should not be effectuated." *Id.*

Accordingly, the hearing justice did not err in invalidating only that provision of the contract between Spino Bros. and DePasquale Bldg. that violated public policy.

**B**

**Entry of Judgment on Liability**

■ Although the parties raise a litany of issues on appeal, treatment of DePasquale Bldg.'s contention that the trial justice erred in denying its post-verdict motion for entry of judgment on liability quickly dispenses of the need to address many of the remaining issues, which are not properly directed at the legal issue underlying this case.

To support its cross-appeal, DePasquale Bldg. contends that, unless Spino Bros. could prove that DePasquale Bldg. was negligent, the plain language of the contractual agreement between the parties required Spino Bros. to fully indemnify DePasquale Bldg. Spino Bros., however, contends that the contract's indemnity clause is not all encompassing, but, rather, makes Spino Bros. liable only for its *own negligent* conduct, which the jury decided was none.

■ This Court reviews questions of law, including those premised on contract interpretation, *de novo. 1800 Smith Street Associates, L.P. v. Gencarelli*, 888 A.2d 46, 52 (R.I.2005). When determining whether the words of a contract are unambiguous, this Court will "view the agreement[ ] in [its] entirety and give the contractual language its 'plain, ordinary and usual meaning.' " *Id.* (quoting *Lajayi v. Fafiyebi*, 860 A.2d 680, 686 (R.I.2004)); *Continental Heller Corp. v. Amtech Mechanical Services, Inc.*, 53 Cal.App.4th 500, 61 Cal. Rptr.2d 668, 670 (1997) (extrapolating

these contract interpretation principles to indemnity agreements).

 Furthermore, "[u]nder established contract law principles, when there is an unambiguous contract and no proof of duress or the like, the terms of the contract are to be applied as written." *Gorman v. Gorman,* 883 A.2d 732, 739 n. 11 (R.I.2005). Indeed, "[i]t is a basic tenet of contract law that the contracting parties can make as 'good a deal or as bad a deal' as they see fit, limited to some extent by certain rules of enforcement." *Durfee v. Ocean State Steel, Inc.,* 636 A.2d 698, 703 (R.I.1994).

In this case, Spino Bros.'s obligation to indemnify DePasquale Bldg. is derived solely from express contractual terms. *See* 4 Steven G.M. Stein, *Construction Law* § 13.17[1] at 13–120 (2006) (identifying express contractual terms as one of three sources from which an indemnity obligation can arise). The contract is abundantly clear. In two sweeping provisions, it requires Spino Bros. to hold DePasquale Bldg. "free of any and all claims of any nature arising out of the performance of the work by [Spino Bros.] under this contract, and shall indemnify [it] * * * with respect to all such claims." Further, Spino Bros. agreed to "indemnify [DePasquale Bldg.] and save [it] harmless from and against any and all loss, damage, liability, judgments, losses, costs and expenses (including, without limitations, attorney's fees and disbursements) arising out of or in connection with any such claim, action, suit or proceeding." The contract further defines such a claim as one that involves "the manner or sufficiency of the performance of the work required under this Agreement."

The contract's plain language is clear and unambiguous and in no way requires negligence on Spino Bros.'s part for DePasquale Bldg. to seek indemnity. Under the contract, Spino Bros. agreed to indemnify DePasquale Bldg. for "*any* and *all* claims of *any nature* arising out of the performance of the work by [Spino Bros.]." (Emphases added). The only limit on the full indemnification that the contract specifies, of course, is that Spino Bros. is not bound to indemnify DePasquale Bldg. for DePasquale Bldg.'s own negligence, for such a provision would violate public policy, as addressed *supra.* Although the contractual indemnification agreement may have been unwise, it clearly provides for wide-ranging indemnifications by Spino Bros. Indeed, there is no question that Spino Bros. agreed to such a far reaching provision.

In accordance with our obligation to apply the contract terms as written, we conclude that the trial justice first erred in limiting Spino Bros.'s liability only to *its negligent* conduct. In light of this conclusion, the trial justice erred further by failing to enter judgment in favor of DePasquale Bldg. Despite DePasquale Bldg.'s urging, the trial justice ruled that judgment had to enter in favor of Spino Bros. because DePasquale Bldg. had not proven Spino Bros.'s negligence. Under the contract's clear terms, however, Spino Bros. agreed to indemnify DePasquale Bldg. for "any and all claims of any nature," not just those claims arising out of Spino Bros.'s negligence. Therefore, when the jury returned a verdict exculpating DePasquale Bldg. of negligence, judgment should have entered in DePasquale Bldg.'s favor, requiring Spino Bros., pursuant to the agreed-upon contract terms, to fully indemnify DePasquale Bldg.

Having concluded that Spino Bros.'s negligence was not in any way controlling in this matter, we may quickly dispense with the parties' remaining contentions, which all sound in negligence.

## C

### Negligence Arguments

#### 1

#### Judgment as a Matter of Law

Spino Bros. contends that the trial justice erred by denying both its initial and renewed motions for judgment as a matter of law. According to Spino Bros., the trial justice should have removed the case from the jury and entered judgment in its favor because DePasquale Bldg. failed to establish the requisite standard of care or that Spino Bros. deviated from any such standard. According to Spino Bros., expert testimony was necessary to establish the proper standard of care and deviation therefrom. Spino Bros. further contends that its motion for judgment as a matter of law was improperly denied because no reasonable juror could find that DePasquale Bldg. established that Carlos's fall resulted from Spino Bros.'s failure to train him.

Despite Spino Bros.'s contentions, DePasquale Bldg. was not required to make either showing. Because the contract between Spino Bros. and DePasquale Bldg. requires Spino Bros. to indemnify DePasquale Bldg. for all claims arising out of Spino Bros.'s work, Spino Bros.'s negligence, if any, is in no way controlling.

#### 2

#### New Trial

Spino Bros. also argues that the trial justice erred by granting DePasquale Bldg.'s motion for a new trial on Spino Bros.'s negligence. We need not reach Spino Bros.'s contention, however, because our determination that the trial justice erred in refusing to enter judgment in DePasquale Bldg.'s favor obviates the need for a new trial on Spino Bros.'s negligence.[6] As was made clear *supra,* Spino Bros.'s negligence is not at issue under the contract, because the express terms of the contract require full indemnification. The only limitation, of course, is that, under Rhode Island law, DePasquale Bldg. cannot be indemnified for its own negligence. Section 6–34–1. Thus, the only question properly before the jury was whether DePasquale Bldg. was negligent. Charged with that question, the jury returned a verdict finding that DePasquale Bldg. was not negligent.

### Conclusion

For the reasons stated herein, we reverse in part and affirm in part the judgment of the Superior Court. The record shall be remanded to the Superior Court to enter judgment, pursuant to the indemnity agreement, in favor of DePasquale Bldg.

Justice ROBINSON did not participate.

---

6. DePasquale Bldg.'s cross-appeal urging this Court to limit the new trial only to Spino Bros.'s negligence likewise is moot in light of our conclusion herein.