DECISION
The City of Cranston (the City) appeals from a Decision of the Rhode Island Labor Relations Board (the Board) in favor of the International Brotherhood of Teamsters, Local 251 (Local 251). In that Decision, the Board found that the City had violated chapter 7 of title 28, otherwise known as the "Rhode Island State Labor Relations Act" (the Labor Relations Act), when it conditioned the release of a personnel file to Local 251 upon the consent of a union member who had filed a grievance against the City. Jurisdiction is pursuant to G.L. 1956 § 28-7-29.
For the reasons set forth below, the Court denies the City's appeal. When a member of Local 251 filed a grievance asserting wrongful termination, the City was required to provide his personnel file to the union representative when requested to do so. Had the City raised confidentiality as an affirmative defense, it had a duty to bargain with Local 251 concerning disclosure of the file in order to satisfy the legitimate concerns of both parties. However, the City was not permitted to condition production of the file on the member's consent to release the information contained therein. *Page 2 
 Facts and Travel
The instant controversy began in October, 2004, when the City terminated the employment of union member, David DeNuccio (Mr. DeNuccio), an Administrative Engineering Technician. See Letter from theCity dated October 14, 2004, at 3. In its termination letter, the City contended that Mr. DeNuccio had failed to follow applicable policies even after being warned. Id. at 1-3. The City further asserted that Mr. DeNuccio also may have been abusing sick and vacation leave.Id. The City further noted that Mr. DeNuccio had failed to appear at a previously scheduled pre-termination hearing conducted on October 13, 2004. Id. at 3. His termination was to be effective October 22, 2004.Id. at 3.
At all times material hereto, Local 251 was recognized as the exclusive bargaining agent for approximately one hundred and sixty employees of the City of Cranston, including Mr. DeNuccio.Transcript (Tr.) dated August 11, 2005, at 13.[1] After receiving the termination letter, Mr. DeNuccio contacted Local 251 and on October 22, 2004, Mr. DeNuccio signed a grievance against the City alleging wrongful termination.[2] See Grievance filed October 25, 2004.
In his signed grievance, Mr. DeNuccio stated that he failed to attend the pre-deprivation hearing due to a "medical condition." Id. Local 251 Steward President Lynn Furney also signed the grievance. See id.
Meanwhile, Local 251 previously had engaged Steven Labrie (Mr. Labrie) to serve as its business agent to handle grievances, negotiate collective bargaining *Page 3 
agreements and to generally ensure compliance with the Collective Bargaining Agreement (CBA). Tr. at 12.
On October 26, 2004, Mr. Labrie faxed a request to the City's Personnel Director, Susan Bello (Ms. Bello), seeking a copy of Mr. DeNuccio's personnel file, as well as any relevant evidence regarding Mr. DeNuccio's termination. See Letter from Mr. Labrie, dated October 26, 2004. Mr. Labrie stated that he "need[ed] this information as soon as possible so that [he could] properly prepare for the arbitration case." Id. Ms. Bello denied the request, stating that Mr. DeNuccio's "file is confidential and cannot be released to you without the written consent of Mr. DeNuccio. Please contact him and have him mail or drop off a letter indicating that he authorizes the release of the file to you." Letter from Ms. Bello, dated October 27, 2004.
After several unsuccessful attempts, Mr. Labrie located Mr. DeNuccio on November 4, 2004, and asked him for written authorization to obtain the file. Tr. at 19-20. Mr. DeNuccio obliged by personally submitting a written request for the file with the City's personnel department, as well as a request for any other relevant information. See Letter fromMr. DeNuccio, dated November 4, 2004, and Tr. at 35. Meanwhile, also on November 4, 2004, Mr. Labrie informed Ms. Bello that he should not have been denied access to Mr. DeNuccio's personal information, and that he intended to file "a Board Charge with the National Labor Relations Board due to the [City's] refusal" to release the personnel file. Letter fromMr. Labrie, dated November 4, 2004.
On November 5, 2004, the City granted Mr. DeNuccio's request and released the file to Local 251. Thereafter, Mr. Labrie negotiated a resolution of the grievance using the information contained in the file.Tr. at 35. *Page 4 
Meanwhile, in response to Mr. Labrie's November 4, 2004 letter, Ms. Bello stated that she had relied upon chapter 2 of title 38, entitled the Access to Public Records Act, and to Section 1 of Rule X of the City of Cranston Civil Service Rules and Regulations (Rule X of the Regulations) to support her position that "personnel records are confidential records [that] cannot be released to someone other than the employee unless the employee consents to the release." See Letter fromMs. Bello, dated November 8, 2004. She concluded that "[i]f I released Mr. DeNuccio's personnel file without his consent, I would be in violation of the Rhode Island General Laws and federal law as well."Id. Ms. Bello then invited Local 251 to file a Charge with the Board so that it could "explain this information to you and my legal obligation to employees with the City of Cranston." Id.
Mr. Labrie disagreed and asserted that G.L. 1956 § 38-2-2 did not apply to Local 251 because it had requested the file in its capacity as a bargaining agent and not as a member of the general public. See Letterfrom Mr. Labrie, dated November 29, 2004. He further contended that the City's Regulations "are subordinate to state law establishing Local 251's right of access to the records as bargaining agent." Id.
Ms. Bello replied to Mr. Labrie's letter with the following statement:
 "It is the policy of the City of Cranston that confidential personnel information that is not a public record will be released if the request is accompanied by a subpoena or if the information is otherwise required by law. Information will also be released upon the written authorization of the employee. It also protects the City of Cranston from the improper and possibly illegal release of confidential employee information.
 Surely you must know that personnel records, such as Mr. DeNuccio's, contain confidential personal information that is unrelated to a grievance presented by a collective bargaining agent. For example, the records may include health care information or information pertaining to family members or personal issues involving the employee that have no relevance to the grievance at *Page 5 
hand. It is the employee's sole right to decide whether or not this unrelated confidential personal information should be released. Clearly it would be inappropriate for the Department of Personnel to sort through a grievant's personnel file to determine what confidential information is relevant to a grievance. Or, a situation may arise where a union member does not want all personnel information released or perhaps does not want any information to be released at all." Letter from Ms. Bello, dated December 1, 2004, at 1.
After the relevant information had been released and the underlying grievance had been settled, Local 251 filed an Unfair Labor Practice Charge against the City on December 22, 2004, asserting that the City had violated G.L. 1956 § 28-7-13(6) and § 28-7-13(10). Specifically, it asserted that the City "has failed and refused to bargain in good faith by adhering to a policy that requires the bargaining agent to obtain the employee's consent before providing the bargaining agent access to a personnel file." Complaint to the Board. Local 251 sought elimination of the policy as its remedy. Id.
On August 11, 2005, the Board conducted a formal hearing on the matter. Both Mr. Labrie and Ms. Bello testified at the hearing.
Mr. Labrie testified that the City never attempted to negotiate with him concerning his request for the file. Tr. at 19. He stated that he eventually received the file after Mr. DeNuccio requested it from the City's personnel department. Id. at 35. The file contained "pretty much what he [Mr. DeNuccio] has done in the number of years he has worked there, his record as far as commendations, evaluations, what type of employee he'd been for the city of Cranston, what he had left over as far as sick time." Id. at 24.
Ms. Bello testified that all employee personnel files are stored in a locked vault and that in general, such files contain
 "Medical information, social security numbers, family information, tax information, family medical information, life insurance, *Page 6 
personnel information regarding salary, vacations, sick days, disciplinary issues, private personal issues that an employee may bring to my attention or a supervisor's attention. It could be a variety of things along with test scores, evaluation reports, memorandums from the supervisor, memorandums from the employee, him or herself." Id. at 77.
Ms. Bello testified she denied Mr. Labrie's request for the file because she believed its disclosure was precluded by G.L. 1956 § 28-6.4-1(a), [3] § 38-2-2(4)(A), chapter 37.3 of title 5, the Confidentiality of Health Care Information Act, and Section 1 of Rule X of the Regulations. Id. at 68-70. Ms. Bello stated that in her opinion, because Mr. Labrie's request was for Mr. DeNuccio's entire file, she believed that request included protected medical information.Id. at 89. However, she acknowledged that she never specifically asked him whether he actually was seeking medical information. Id. Ms. Bello further acknowledged that she never offered to redact any information that she may have deemed confidential. Id. at 95. Ms. Bello also stated that the challenged policy still was in effect at the time of the hearing. Id. at 101.
At the close of the hearing, counsel for the Local 251 requested that the Board issue a Cease and Desist Order. Id. at 107. Specifically, he requested that the City be required "on an ongoing basis[,] [to] respond to the union's request in a timely fashion, that they make a decision as to whether or not the requesting [sic] information is reasonable, reasonably related to the grievance, in which case at that point if there's any potentially confidential information, there needs to be negotiations which go on." Id. *Page 7 
After considering the evidence and the post-hearing memoranda submitted by the parties, the Board issued its Decision on March 26, 2007. The Board found that the City had absolutely refused to consider the possibility that Local 251 may have had a right to the file without consent; rather, it found that the City merely issued a blanket refusal without any attempt to ascertain whether the file in fact contained sensitive material. See Board's Decision dated March 26, 2007, at 7. The Board concluded that such a blanket prohibition constituted a violation of §§ 28-7-13 (6) and (10). The Board then ordered the City "to cease and desist from relying on blanket prohibitions for access to personnel files by certified bargaining representatives and to bargain with the union over future access to personnel files." Id. at 9. The City timely appealed the Board's Decision to this Court.
 II Standard of Review
This Court's review of the Board's Decision is governed by chapter 35 of title 42, entitled the Administrative Procedures Act. See Town ofBurrillville v. R.I. State Labor Relations Bd., 921 A.2d 113, 118 (R.I. 2007). General Laws Section 1956 § 42-35-15(g) provides:
 "[t]he court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings, or it may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, interferences, conclusions, or decisions are:
 (1) In violation of constitutional or statutory provisions;
 (2) In excess of the statutory authority of the agency;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion." Id. *Page 8 
When reviewing a decision under the Administrative Procedures Act, this Court may not substitute its judgment for that of the agency on questions of fact. Johnston Ambulatory Surgical Ass'n, Inc. v.Nolan, 755 A.2d 799, 805 (R.I. 2000). "The court is limited to an examination of the certified record to determine if there is any legally competent evidence therein to support the agency's decision."Barrington Sch. Comm. v. Rhode Island State Labor Relations Bd.,608 A.2d 1126, 1138 (R.I. 1992).
However, "[q]uestions of law determined by the administrative agency are not binding upon [the Court] and may be freely reviewed to determine the relevant law and its applicability to the facts presented in the record." Dep't of Envt'l Mgmt. v. Labor Rels. Bd., 799 A.2d 274, 277
(R.I. 2002) (citing Carmody v. Rhode Island Conflict of InterestCommission, 509 A.2d 453, 458 (R.I. 1986)). Thus, "[a]lthough factual findings of an administrative agency are afforded great deference, a dispute involving statutory interpretation is a question of law to which [the Court] appl[ies] de novo review." Rossi, 895 A.2d at 110 (citingIn re Advisory Opinion to the Governor, 732 A.2d 55, 60 (R.I. 1999)).
 III Analysis
The City asserts that Local 251 does not have the right to bargain over the release of personnel files because the CBA incorporates the City's Civil Service Rules and Regulations (the Regulations) and that Rule X of the Regulations specifically authorizes its current personnel file release policy.[4] The City also maintains that it has been consistent in the application of this *Page 9 
policy and that Local 251 has not demonstrated that Mr. DeNuccio suffered any harm or that the policy was a pretext for denying Local 251 access to information to which it was entitled. The City further contends that even if Local 251 did have a right to bargain, it waived that right when it failed to request negotiation on the matter.
Local 251 maintains that the reliable and probative evidence in the record supports the Board's conclusion that the City committed an unfair labor practice. Local 251 also maintains that Rule X does not apply because it both violates applicable law and is superceded by the CBA and that any claim of confidentiality must be balanced against a union's need for the information. Thus, it contends, blanket refusals to release personnel files, absent written consent, frustrate its statutory duty to represent its members. Local 251 further contends that it did not waive its right to bargain because the City failed to provide a meaningful opportunity to bargain.
This case involves issues of both contract and statutory interpretation. The Court observes at the outset that questions of law, such as statutory and contract interpretation, are reviewed by this Court on a de novo basis. See Rodrigues v. Depasquale Bldg. RealtyCo., 926 A.2d 616, 624 (R.I. 2007) and Palazzolo v. State ex rel.Tavares, 746 A.2d 707, 711 (R.I. 2000).
At the outset, the Court observes that this case involves issues of both contractual and statutory interpretation. It is axiomatic that questions of law are reviewed by this Court on a de *Page 10 novo basis. See Riley v. R.I. Dep't of Envtl. Mgmt., 941 A.2d 198, 204
(R.I. 2008) (stating that "[w]hen the decision of a trial justice or of the agency is based upon questions of law, we review those findingsde novo."); Arnold v. Lebel, 941 A.2d 813, 817 (R.I. 2007) (reviewing APA provisions on a de novo basis);
 A. Contractual Interpretation
The first issue to be addressed is whether Rule X of the Regulations controls the City's current personnel file release policy.[5]
Essentially, the Court must determine whether Rule X trumps applicable law due to the fact that the CBA expressly incorporates the Regulations by reference. The Court concludes that Rule X does not control.
It is well settled that, "[w]hen determining whether the words of a contract are unambiguous, this Court will view the agreement in [its] entirety and give the contractual language its plain, ordinary and usual meaning." Rodrigues, 926 A.2d at 624 (quoting 1800 Smith StreetAssociates, LP v. Gencarelli, 888 A.2d 46, 52 (R.I. 2005)) (internal quotations omitted). Additionally, in situations where "there is an unambiguous contract and no proof of duress or the like, the terms of the contract are to be applied as written." Rodrigues, 926 A.2d at 624
(quoting Gorman v. Gorman, 883 A.2d 732, 739 n. 11 (R.I. 2005)). Furthermore, "[i]t is a basic tenet of contract law that the contracting parties can make as `good a deal or as bad a deal' as they see fit, limited to some extent by certain rules of enforcement."Rodrigues, 926 A.2d at 624 (quoting Durfee v. Ocean State Steel,Inc., 636 A.2d 698, 703 (R.I. 1994)). *Page 11 
The record reveals that the City negotiated the CBA with Local 251's predecessor union, and that Local 251 adopted the CBA in its entirety when it assumed representation of the covered employees. Article IV, Section 2, of the CBA provides:
 "The City's Civil Service Rules and Regulations and City Charter now existing are incorporated by reference as if fully set forth herein. To the extent that any provisions of the City Service Rules and Regulations conflict with the express provisions of this agreement, any such conflict shall be resolved in favor of this agreement. The Parties shall likewise comply with the Charter." (Emphasis added.)
It is clear from the plain language of Article IV, Section 2, that the CBA incorporates the Regulations; however, it also is clear that if such Regulations conflict with the CBA, the language of the CBA prevails.
Article IV, Section 1, of the CBA provides in pertinent part:
 "The Employer has the right to promulgate reasonable rules and regulations pertinent to the employees covered by this agreement, so long as these rules and regulations or any of the rights in this article do not conflict with the terms and conditions of this agreement and applicable law." (Emphasis added.)
According to the plain language of this provision, the CBA prohibits the promulgation of rules and regulations that violate applicable law. Therefore, if the Regulations conflict with applicable law, the applicable law controls.
In the instant matter, the applicable law is the Labor Relations Act. Thus, in accordance with the CBA, even if, as the City contends, Rule X of the Regulations grants the Director discretion in determining whether certain personnel records are confidential rather than public, that alleged discretion must be considered in light of the Labor Relations Act.
In addition, pursuant to the CBA, "[t]he Employer recognizes the Union as the sole and exclusive bargaining agent for the purpose of establishing salaries, wages, hours of work and *Page 12 other terms and conditions of employment for those employees . . . [,]" covered by the CBA. Article 1 Section 1 of the CBA (emphasis added). Because Local 251 was Mr. DeNuccio's exclusive bargaining representative, his right "to deal with the [City] with respect to [his claim] was surrendered to the union[,] . . . [and he] was bound by the agreement made on his behalf by the union to the same extent as though he had entered into it individually." Ritacco v. Brown Sharp Mfg.Co., 96 R.I. 302, 306, 191 A.2d 158, 160 (1963). Furthermore, "[a]s a member in good standing in the union he was bound by all the contractual provisions." Id.
The CBA provides that "[a] grievance is a dispute between the Employee (or the Union) and the Employer which involves the application, meaning or interpretation of the express provisions of this agreement . . . The procedures set forth in this article shall comprise the sole and exclusive dispute resolution process for a grievance." Article XXVIII, Section 1, of the CBA. Additionally, "[a]ll grievances shall be signed by a duly authorized Union representative." Id. at Section 3.
Thus, according to the plain and ordinary meaning of the CBA, Local 251 was Mr. DeNuccio's sole and exclusive bargaining agent with respect to the terms and conditions of his employment. As a result, because his right to bargain with the City had been surrendered to Local 251 in accordance with the CBA, Mr. DeNuccio did not have a right to bargain on his own behalf with respect to his grievance.
 C. Statutory Interpretation
The City contends that Rule X of the Regulations authorizes its personnel file release policy. However, as already noted, the CBA requires that in situations where the Regulations conflict with applicable law, applicable law controls. Consequently, the next issue to be *Page 13 
addressed is whether the Labor Relations Act permits the Director to condition the production of a personnel file belonging to a member of Local 251 upon that member's consent to release the information contained therein.
According to the cannons of statutory interpretation, where the language of a statute "is clear on its face, then the plain meaning of the statute must be given effect and this Court should not look elsewhere to discern the legislative intent." Retirement Bd. ofEmployees' Retirement System of State v. DiPrete, 845 A.2d 270, 297
(R.I. 2004) (internal quotations omitted). When statutory provisions are unclear or ambiguous, this Court examines the statute in its entirety.See In re Advisory to the Governor, 668 A.2d 1246, 1248 (R.I. 1996). This Court also must be mindful that where "the provisions of a statute are unclear or subject to more than one reasonable interpretation, the construction given by the agency charged with its enforcement is entitled to weight and deference, as long as that construction is not clearly erroneous or unauthorized." Labor Ready Northeast, Inc. v.McConaghy, 849 A.2d 340, 345 (R.I. 2004).
However, "[a]n agency cannot modify the statutory provisions under which it acquired power, unless such an intent is clearly expressed in the statute." Little v. Conflict of Interest Commission, 121 R.I. 232,236, 397 A.2d 884, 886 (1979); see also State (Dep't of Admin.) v. R.I.Council 94, A.F.S.C.M.E., AFL-CIO, Local 2409, 925 A.2d 939, 945 (R.I. 2007) (recognizing that "arbitrators may and should decide questions of relevant state law and the interpretation thereof in resolving a grievance brought pursuant [to] a CBA"). Finally, "[t]his Court will not construe a statute to reach an absurd result." State v. Flores,714 A.2d 581, 583 (R.I. 1998) (quoting Kaya v. Partington, 681 A.2d 256, 261
(R.I. 1996)).
Pursuant to § 28-7-2 of the Labor Relations Act,
 "In the interpretation and application of this chapter and otherwise, it is declared to be the public policy of the state to encourage the *Page 14 
practice and procedure of collective bargaining, and to protect employees in the exercise of full freedom of association, self organization, and designation of representatives of their own choosing for the purposes of collective bargaining, or other mutual aid and protection, free from the interference, restraint, or coercion of their employers." Section 28-7-2(d).
Accordingly, "[a]ll the provisions of this chapter shall be liberally construed for the accomplishment of this purpose." Section 28-7-2 (e).
In its Decision, the Board found that the City had committed an unfair labor practice when it refused to release Mr. DeNuccio's personnel file absent his written request. Specifically, it found that the City had violated §§ 28-7-13 (6) and (10) which provide:
 "It shall be an unfair labor practice for an employer to:
 . . .
 (6) Refuse to bargain collectively with the representatives of employees, subject to the provisions of §§ 28-7-14 — 28-7-19, except that the refusal to bargain collectively with any representative is not, unless a certification with respect to the representative is in effect under §§ 28-7-14 — 28-7-19, an unfair labor practice in any case where any other representative, other than a company union, has made a claim that it represents a majority of the employees in a conflicting bargaining unit.
 . . .
 (10) Do any acts, other than those already enumerated in this section, which interfere with, restrain or coerce employees in the exercise of the rights guaranteed by § 28-7-12.
Section 2-28-12 provides in pertinent part:
 "Employees shall have the right of self organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in concerted activities, for the purpose of collective bargaining or other mutual aid or protection free from interference, restraint, or coercion from any source."
This Court frequently looks to the federal courts for guidance when addressing labor law issues. See Town of Burrillville v. Rhode IslandState Labor Relations Board, 921 A.2d 113, 120 (R.I. 2007) (citingDiGuilio v. Rhode Island Brotherhood of Correctional Officers, *Page 15 819 A.2d 1271, 1273 (R.I. 2003)). "The duty to bargain collectively, imposed upon an employer by § 8(a)(5) of the National Labor Relations Act [29 U.S.C. §§ 151-158], includes a duty to provide relevant information needed by a labor union for the proper performance of its duties as the employees' bargaining representative." Detroit Edison v. National Labor RelationsBoard, 440 U.S. 301, 303 (1979). That is because "[t]he right to bargain collectively would be little more than a hollow promise if a bargaining agent did not have the concomitant right to muster the information needed to conduct that bargaining effectively." Providence Hospital v.National Labor Relations Board, 93 F.3d 1012, 1016 (1st Cir. 1996).
However, "[a] union's bare assertion that it needs information to process a grievance does not automatically oblige the employer to supply all the information in the manner requested." Detroit Edison,440 U.S. 301 at 314. "The duty to supply information . . . turns upon `the circumstances of the particular case.'" Id. Furthermore, "[a] breach of this duty constitutes an unfair labor practice. . . ." ProvidenceHospital, 93 F.3d at 1016. However, "an employer's commitment to, or genuine need for, confidentiality sometimes can constitute an appropriate reason for keeping documents — even documents that are potentially relevant to the collective bargaining process — out of a union's hands." Id. at 1020.
In situations where confidentiality is an issue, "the Board must carefully balance the employer's need for privacy against a union's need to make informed decisions in its capacity as the employees' bargaining representative." Id. Due to the fact that "confidentiality is in the nature of an affirmative defense, it is the employer's burden to demonstrate that the requested information is shielded by a legitimate privacy claim." Id. Furthermore, "to permit the requisite balancing, the employer must advance its claim of confidentiality in its response to the union's information request." Id. That way, "the parties have a fair opportunity to confront the problem *Page 16 
head-on and bargain for a partial disclosure that will satisfy the legitimate concerns of both sides." Id.
The Court considers three factors when determining whether confidential information may be released. See New Jersey Bell TelephoneCompany v. National Labor Relations Board, 720 F.2d 789, 791 (3rd Cir. 1983). Those factors are "(1) the sensitive nature of the information sought; (2) the minimal burden that a requirement of employee consent would impose on the union; and (3) the lack of evidence that the employer had fabricated concern for employee confidentiality only to frustrate the union in the discharge of its responsibilities."Id. Furthermore, "any possible impairment of the union's function in processing grievances is more than justified by the interests served in conditioning disclosure on the consent of the very employees whose grievances are being processed." Id.
In the instant matter, the Board found that the City "never made any effort to undertake any balancing and immediately took the position that all the information contained in Mr. DeNuccio's personnel file was non-disclosable to the Union, without the employee's consent."Decision at 7. It further found that it "is clear from the letters sent from the Employer to the Union [that] the Employer absolutely refused to even consider the possibility that the Union had the right to information, irrespective of any employee's consent." Id. It noted that although Ms. Bello
 "attempted to posture her refusal as one relating to protecting the employee's medical privacy . . . upon cross-examination, she acknowledged that she never inquired whether the Union was, in fact, seeking medical information. In fact, the record is abundantly clear that all Ms. Bello did was issue a blanket refusal to release any records without written employee consent and to continue to stand by that blanket refusal, regardless of the entreaties made to her. She never attempted to ascertain the information actually contained in the file and whether there was any information of a *Page 17 
sensitive nature that may be withheld. This type of blanket refusal is a prohibited practice under federal law. . . ." Id.
The Board then ordered the City to "cease and desist from relying on blanket prohibitions for access to personnel files by certified bargaining representatives and to bargain with the union over future access to personnel files. Id. at 8.
The record reveals that Mr. DeNuccio signed his grievance on October 22, 2004. Local 251 Steward President Lynn Furney also signed the grievance, as required by Article XXVIII, Section 1, of the CBA. Pursuant to the Labor Relations Act, Local 251, as Mr. DeNuccio's exclusive bargaining representative, had the right request access to his entire personnel file without his written consent. Thereafter, the City had the burden of demonstrating that the file contained information that was shielded by a legitimate claim of employee confidentiality. To satisfy this burden, the City had a duty to bargain with Local 251 in order to satisfy the parties' legitimate concerns.
In light of the foregoing, the Court concludes that the Director did not have the discretion to deny Local 251 any and all access to Mr. DeNuccio's file absent his consent, and it further concludes that Rule X of the Regulations is not applicable in the present circumstances. Consequently, the Board did not err in concluding that the City had committed an unfair labor practice when it refused to release Mr. DeNuccio's personnel file absent his written request.
 D. Waiver of the Right to Bargain
Considering that Local 251 had a right to bargain for access to Mr. Denuccio's personnel file absent his consent, the Court now must determine whether Local 251 waived that right when it failed to request bargaining. Relying on Town of Burrillville v. Rhode Island StateLabor *Page 18 Relations Board, 921 A.2d 113 (R.I. 2007), the City contends that Local 251 did waive that right. However, the Court concludes that such reliance is misplaced.
In Town of Burrillville, the Town's Police Chief gave the police officers' labor union notice of a proposed procedural change to the Town's injured-on-duty benefits. Town of Burrillville, 921 A.2d at 116. The union, however, failed to request bargaining prior to implementation of the change. Id. at 117. Our Supreme Court held that such failure constituted a waiver of the union's right to bargain because "it is incumbent upon [a] union to act with due diligence with respect to requesting bargaining once the union has received adequate notice of a proposed modification in the terms or conditions of employment."Id. at 120 (internal quotations omitted). The Court noted, however, that it "will not find waiver if a proposed change has been made irrevocable prior to the notification of the union or if the change has otherwise been announced as a matter on which the employer will not bargain."Id.
In the instant matter, there is no evidence that the City's personnel file release policy constituted a duly noticed change in the terms and conditions of employment requiring Local 251 to request bargaining; instead, this case involves prohibiting the release of a personnel file which refusal was inconsistent with appropriate law and public policy that had been in effect for many years prior to Mr. DeNuccio's termination. Under the Labor Relations Act, the City had the burden of demonstrating the confidential nature of any of Mr. DeNuccio's personnel information that it did not wish to release; consequently, it had an affirmative duty to bargain with Local 251 over access to that information. As such, the Court concludes that Local 251 did not affirmatively waive its right to bargain when it failed to request bargaining after it received the City's blanket refusal to release Mr. DeNuccio's personnel file. *Page 19 
 IV Conclusion
In light of the foregoing, the Court concludes that Local 251 had a right to bargain for access to Mr. DeNuccio's personnel file absent his consent under the Labor Relations Act and the CBA, and that Rule X of the Regulations did not supercede that right. The Court further concludes that Local 251 did not waive its right to bargain. Consequently, the Decision of the Board was not in violation of statutory or constitutional provisions or made upon unlawful procedure. The substantial rights of the Appellants were not prejudiced. Accordingly, the Decision of the Board is affirmed
Counsel shall submit an appropriate order consistent with this Decision.
[1] When Local 251 assumed the role as the exclusive bargaining agent for City employees, it adopted the CBA previously negotiated by the Cranston City's Workers' Union. Tr. at 36-37.
[2] Ultimately, the underlying grievance was resolved and is not at issue in this case. Transcript dated August 11, 2005, at 25. Although not raised, the Court will consider whether the issue of mootness is relevant to this case.
It is well settled that "[a] case is considered moot if there was a justiciable controversy present when it began, but a change in circumstances leaves the litigant without a stake in the outcome."State v. Perry, 944 A.2d 177, 178 (R.I. 2008). Review of a moot case is permissible "when the subject matter is of `extreme public importance' and the issues are capable of repetition but evade review."Id. It is not clear that the mootness doctrine actually would apply in the instant matter because the litigant in the underlying grievance was Mr. DeNuccio, whereas this case involves an Unfair Labor Practice Action filed by Local 251. However, even if the matter could be construed as moot, the issue in this case is of extreme public importance because it thwarts the statutorily mandated bargaining process and is not only capable of repetition, but is still the admitted policy of the City.
[3] Section 28-6.4-1(a) (Inspection of Personnel Files) provides:
 "(a)(1) Every employer shall, upon not less than seven (7) days advance notice, holidays, Saturdays, and Sundays excluded, and at any reasonable time other than the employee's work hours and upon the written request of an employee, permit an employee to inspect personnel files which are used or have been used to determine that employee's qualifications for employment, promotion, additional compensation, termination, or disciplinary action. This inspection shall be made in the presence of an employer or employer's designee."
[4] The City does not press the alleged applicability of the Access toPublic Records Act or the Confidentiality of Health Care Information Actbefore this Court. However, even if it had, the Court concludes that these statutes do not apply to the present circumstances.
The Confidential Health Care Communication Act generally protects "a patient's health care information" from disclosure without that patient's written consent. Section 5-37.3-4. Accordingly, "[t]hird parties receiving and retaining a patient's confidential health care information must establish at least the following security procedures: (1) Limit authorized access to personally identifiable confidential health care information to persons having a `need to know' that information[.]" Section 5-37.3-4(c) (emphasis added). In this case, Local 251 would "need to know" limited personally identifiable confidential information, subject to authorization. Such information would be ascertained through the bargaining process established by the Rhode Island Labor Relations Act.
The Access to Public Records Act protects from disclosure certain information the release of which information would constitute "an unwarranted invasion of personal privacy." Section 38-2-1. However, "any reasonably segregable portion of a public record excluded by this section shall be available for public inspections after the deletion of the information which is the basis of the exclusion, if disclosure of the segregable portion does not violate the intent of this section." Section 38-2-2(ii) (emphasis added). It is not clear that this provision even applies to Local 251 because its access to personnel files during the course of a grievance procedure probably would not be considered a public inspection. However, even if it does apply to such circumstances, it also contemplates the reasonable segregation of a portion of the public record. Again, this segregation could be determined during the above bargaining process.
[5] Rule X of the City's Civil Service Rules and Regulations provides in pertinent part:
 "Personnel records, except examinations, service rating records, personal histories and such other records as may be specified in these rules or by the Personnel Director as confidential, shall be public records and shall be open to public inspection during office hours at reasonable times and in accordance with such procedures as the Personnel Director may prescribe." (Emphasis added.)